IN RE SANITARY AND IMPROVEMENT DISTRICT NO. 75 OF DOUGLAS COUNTY, NEBRASKA.

SANITARY AND IMPROVEMENT DISTRICT NO. 75 OF DOUGLAS COUNTY, NEBRASKA, APPELLANT, V. CITY OF RALSTON, APPELLEE.

152 N. W. 2d 111

Filed July 7, 1967. No. 36503.

Frost, Meyers & Farnham, for appellant.

Shrout, Hanley, Nestle & Caporale, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an appeal from a summary judgment determining that Wildewood Addition was not validly annexed to the city of Ralston, hereinafter referred to as city, and that the city did not become liable for any indebtedness of Sanitary and Improvement District No. 75 of Douglas County, Nebraska, hereinafter referred to as district 75. City is a city of the second class, located in Douglas County, Nebraska.

During the early part of the year 1961, city was approached by developers of Fairview Heights and Wildewood Addition for voluntary annexation to city. Wildewood Addition was not contiguous to city unless Fairview Heights was also annexed. City's evidence is that the developers were told that city would only be willing to annex the areas if annexation would involve no financial obligation on the part of city. Specifically, the developers were advised that city would not incur expenses for water, sewer, and paving.

The record would indicate that agreements were to

be prepared by developers and presented to the city council previous to annexation. The attorney for Fairview Heights corroborated this version, and testified that an agreement was prepared and signed for Fairview Heights.

On August 15, 1961, city passed annexation ordinance No. 464, annexing both developments by metes and bounds. The 1961 mayor and all of the councilmen who appeared testified that there was a written agreement signed by the Wildewood developers, but it was not produced and they did not know where it was. No evidence was produced as to its actual contents except the testimony that the annexation was to be at no cost to city, and all paving, water, and sewer were to be at the expense of the developer. This evidence is not rebutted by district 75 except by inference from a copy of a letter produced by the developer dated June 23, 1961, as follows:

"To: City of Ralston, Nebraska

"In re: Wildewood Addition - Northeast
Corner of 84th and Harrison

"Gentlemen:

"With respect to the above plat, it is our understanding that the City of Ralston, Nebraska will annex this area to the City and will permit connection of the sewers with the City system. The undersigned developer agrees as follows:

"1) The developer has formed Sanitary and Improvement District No. 75, which District has sufficient funds to install sewer and street surfacing. All lots specially benefited will be specially assessed, and the cost of the outfall sewer together with intersections and oversizing of Ralston Avenue beyond 24 feet will become part of the general obligation debt of the District, as is customary in this area.

"2) The protective covenants attached hereto will be placed of record.

"3) A complete sanitary sewer system, water mains

and gas mains will be installed to serve all lots in the Addition, subject to the approval of the Ralston City Engineer. *These improvements shall be paid for by the District above described.* (Italics supplied.)

"4) Concrete streets and intersections shall be installed in accordance with Ralston's specifications to serve all lots, and the cost thereof shall be paid by the District as above described.

"5) The annexation of the area to the City of Ralston shall be effective as of the tender of the plat for recording.

"EXECUTED this 22nd day of June, 1961.

> "WILDEWOOD DEVELOPMENT CO.
>
> "By: ————————————
>
>                                     Agent."

The agent and principal developer, Clair M. Wilson, was deceased at the time of the trial.

District 75 is a municipal corporation, organized, established, and approved by the Douglas County district court on April 11, 1961, to construct public improvements. Wildewood Addition and district 75 are identical except for one building lot which is in the district but not in Wildewood Addition. This lot was jointly owned by the trustees of the district. The annexation ordinance, therefore, included all of district 75 except one building lot.

On September 21, 1961, the trustees of district 75 adopted a resolution of necessity to construct sanitary sewer, section 1, and paving and storm sewer, section 1. On January 19, 1962, the trustees of district 75 adopted a resolution of necessity to purchase a sanitary outfall sewer. On April 5, 1963, the trustees of district 75 adopted a resolution of necessity to construct paving and storm sewer, section 2, sanitary sewer, section 2, and water system, section 2. These were all constructed and warrants were issued by district 75 to cover their payment. The city council was not consulted relative to these improvements, took no part in them, was not

notified of any trustees' meeting of district 75, and never attended any such meeting. The improvements, however, were inspected by the city engineer, in accordance with the agreement that all improvements would conform to city standards.

The present action was instituted by district 75 on December 14, 1964, in the form of a petition for approval of proceedings and for the approval of issuance and sale of bonds, as provided in Chapter 31, Reissue Revised Statutes of Nebraska, 1943. On the same day, an application was filed for a merger decree merging district 75 with city, and transferring all of the rights, privileges, duties, and obligations of district 75 to city. The answer to the application for a merger decree raised the issue that the annexation order was not valid by reason of misrepresentation, and there was therefore no basis for merger.

The decree of the court determined annexation ordinance No. 464 to be void; that Wildewood Addition was not annexed to the city by that ordinance; that no merger was effected by it; and that the city was not liable for any indebtedness of district 75. It further provided that the city refund within a reasonable time to the real estate owners of Wildewood Addition all taxes properly refundable, paid by said real estate owners pursuant to the city levies for the years 1961, 1962, 1963, 1964, and 1965. The decree made no provision respecting the petition for approval of the proceedings and the issuance and sale of bonds, nor did the decree make any provision respecting the consequences of the voiding of annexation ordinance No. 464 on Fairview Heights, which subdivision was annexed at the same time and as a part of the same ordinance.

The problem is the liability for the general obligation portion of the improvements made by the trustees of district 75 subsequent to the annexation ordinance, if the ordinance is valid as to Wildewood Addition. This problem is not met, except by inference, by either brief, and

we see no purpose in discussing the various assignments argued in the briefs. City attempts to avoid any liability by voiding the annexation ordinance because of misrepresentation. District 75 seeks merger to make the general obligation of the district the obligation of the city.

Section 31-763, R. R. S. 1943, covers the annexation by a city of all of the property within the boundaries of a sanitary and improvement district. It provides in that instance that the district shall merge with the city, and the city shall succeed to all the property rights and obligations of the district.

Section 31-765, R. R. S. 1943, provides that the merger shall be effective 30 days after the effective date of the ordinance annexing the territory within the district, unless challenged by a court proceeding, in which event the effective date shall be 30 days after a final determination of the validity of the ordinance.

Section 31-766, R. R. S. 1943, which is the one applicable herein, provides if only a part of the territory within any sanitary and improvement district is annexed by a city or village, the district, acting through its trustees, and the city or village, acting through its governing body, may agree between themselves as to the equitable division of the assets, liabilities, maintenance, or other obligations of the district and for a change in the boundaries of the district so as to exclude the portion annexed by the city or village from the district, or may agree upon a merger of the district with the city or village. This section further provides that if the district and the city do not agree upon an adjustment of all matters growing out of the annexation of a part of the territory located within the district, either party may apply to the district court for an adjustment of all matters growing out of the annexation.

In this instance, no attempt was made to comply with the provisions of section 31-766, R. R. S. 1943, until this action, which was filed December 14, 1964, or more than

3 years after the passage of the annexation ordinance. As of the time, of annexation, and within 30 days thereafter, there was no obligation to be assumed by the city. The trustees of district 75 continued to treat Wildewood Addition as though it were still a part of the district, and to incur the liability for the improvements listed heretofore, all of which took place more than 30 days subsequent to the passage of the annexation ordinance. In addition thereto, the trustees of district 75, without regard to any rights of the, city, determined that the total cost of the improvements was $382,440.48, of which $189,252.75 was levied as special assessments against individual lots, and the balance was determined to be a general obligation of the district.

Section 17-568.01, R. R. S. 1943, provides that before a city of the second class may make any contract for improvements which exceed $2,000, an estimate of the cost thereof shall be submitted to the city council, and no contract shall be entered into for any improvements for a price exceeding such estimate nor without advertising for bids, in the manner provided in said section. The engineer's estimate, of costs is jurisdictional, and must be submitted to and approved by the city council before a contract may be made. Moss v. City of Fairbury, 66 Neb. 671, 92 N. W. 721.

Section 31-730, R. R. S. 1943, provides specifically that no land within a municipality may be included in the. formation of a sanitary and improvement district. Section 31-761, R. R. S. 1943, provides that no district may enlarge by annexing or including land located within any municipal corporation. The intent of these statutory provisions is obvious.

There is no provision in article 7 of Chapter 31, R. R. S. 1943, which permits the trustees of a district to continue to incur liability for any portion of the district annexed by a municipality. Section 31-766, R. R. S. 1943, covers the annexation of a portion of a district, and, notwithstanding the permissive tone of the language

used, it obviously contemplates a prompt division of the assets and liabilities of the district and the exclusion of the portion annexed from further control by the district. Further, no provision has been called to our attention which would permit the governing body of a second-class city to allow any corporation to usurp the city's prerogatives and to incur obligations to be assumed by the taxpayers of the city.

The annexation of Wildewood Addition was a voluntary annexation, sought by the developers for the benefit of Wildewood Addition. The inferences are fairly conclusive that the city was only interested if annexation could be accomplished without cost to the city. The testimony is undisputed that both the developers of Fairview Heights and Wildewood Addition agreed to those conditions. The attorney for Fairview Heights testified that Fairview Heights complied with the conditions. It is apparent that the developers of Wildewood Addition, by forming a sanitary and improvement district with an additional building lot, attempted to retain control of the installation of all public improvements in Wildewood Addition, even though it was annexed to the city. We will not speculate on the reason for this, except to observe that if this lot had been included in the annexation, merger would have been automatic in 30 days.

We do not agree with district 75 that equity and justice require a merger so as to transfer an obligation in excess of $200,000 from district 75 to all of the property owners in city. The record is conclusive, if the development had been handled by city instead of district 75, any bonds used to pay for it would command a lower interest rate than it is possible for district 75 to obtain. We note the testimony of the representative of the company which from the start has worked with district 75 on financing the improvements and which expects to float the proposed bond issue. That testimony in substance is that they did not put the bond

rate as low as possible because they did not want to give up their "windfall," even though the liability may be shifted to the city. The individuals who dealt with district 75 did so at their own risk. Equity does not require that the property owners in district 75 be permitted to shift a portion of their burden to all of the taxpayers of city. Equity and justice in this instance is with city.

The trial court sought to remedy the situation by voiding ordinance No. 464. The answer is not quite that simple. Wildewood Addition has had the benefit of all city services since annexation. Fairview Heights is also involved in ordinance No. 464. The, more obvious answer is to effectuate as nearly as possible, under the equity powers of the court, the intention of the parties as we determine that intention to be.

We find that the trustees of district 75 exceeded their authority in making further improvements in that portion of Wildewood Addition annexed by city. We do not interpret section 31-766, R. R. S. 1943, to permit the district trustees to continue, to improve any portion of the district annexed under is terms. While the change of boundaries is not to be effective until a decree of the district court is entered confirming any agreement, the section contemplates that the, rights of the parties will be promptly adjusted after annexation.

The officials of city are not without fault herein. They were aware of the improvements being made after annexation and were as much bound by the provisions of section 31-766, R. R. S. 1943, as the trustees. District 75 raises the issue of estoppel. Ordinarily, the doctrine of equitable estoppel cannot be invoked against a municipal corporation in the exercise of governmental functions, but exceptions are made where right and justice so demand, particularly where the controversy is between one class of the public as against another class. May v. City of Kearney, 145 Neb. 475, 17 N. W. 2d 448. While the laxity of the city council is inexcusable, we do not feel right and justice demand that es-

toppel should be invoked herein to benefit an active participant at the expense of the taxpayers of the city. As we, held in Sedlak v. Duda, 144 Neb. 567, 13 N. W. 2d 892, 154 A. L. R. 490: "A party may not properly base a claim of estoppel in his favor on his own wrongful act or dereliction of duty, or fraud committed or participated in by him, or on acts or omissions induced by his own conduct, concealment, or representations."

The improvements have been made and rights of creditors are now involved. District 75 has the benefit of the improvements. The creditors contracted with district 75, relying on the credit of the district. The liability was intended to be, is, and should remain that of the property owners in district 75. This effectuates the intention of the parties as we determine it to be. This also protects the rights of creditors by giving them the full benefit of their contract.

For the reasons given, we, direct that the judgment of the district court voiding annexation ordinance No. 464 be reversed and the cause remanded. We also direct that the court proceed with a hearing on the petition for approval of all proceedings and for the approval of issuance and sale of bonds, and that district 75 be permitted to issue bonds for not to exceed 30 years, in accordance with section 31-755, R. R. S. 1943, on such conditions as the court may direct. We also direct that these bonds be the sole obligation of district 75 and the property owners in district 75, and in no way constitute a liability of city. We further direct that subsequent to approval and issuance of the bonds of district 75 a merger of the district be approved on the specific condition that no part of the liability of district 75 and the owners thereof for the special improvements covered by said bonds shall become a liability of the city, but shall remain the sole liability of the, property owners embraced within the confines of district 75.

REVERSED AND REMANDED WITH DIRECTIONS.