WILLIAM J. KELLY, APPELLEE, v. WILLIAM KANNARR: HINDS STATE BANK, INTERVENER, APPELLANT.

FILED MAY 8, 1929. No. 26626.

*Jack, Laughlin & Vette,* for appellant.

*J. A. McGuire, Bartos, Bartos & Placek* and *Grant G. Martin,* contra.

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

This is a case in replevin. Plaintiff Kelly sued in the Eighteenth district to foreclose a chattel mortgage on a 1927 crop of corn, and defendants Kannarr and intervener Hinds State Bank defended, denying generally the allegations of the petition, denying in particular that the plaintiff's mortgage had been properly filed, asserting that the described mortgage was obtained by fraud from the Kannarrs who executed and delivered the same, and asserting that it was in any event second and subject to a mortgage of later date made by said Kannarrs to the intervening bank, the latter mortgage having been given in pursuance of an agreement theretofore made by the parties in 1926. In answer to this the plaintiff denied the fraud and contended that an agreement made in 1926 for a mortgage on a 1927 crop could not give the bank a priority because the crop was not then in existence.

The Hinds bank, intervener, cross-petitioned for the corn. In general it may be said that the parties all presented their respective claims and contentions by appropriate pleadings, and made due denial in such pleadings of all conflicting matters of fact alleged by their adversaries.

Trial was had to a jury and a verdict was returned giving plaintiff a priority on 1,350 bushels of corn. Judgment was entered on the verdict.

The trial court excluded from evidence exhibit A, which was a 1926 chattel mortgage from the Kannarrs to the Hinds State Bank, containing the before mentioned agreement to give a similar chattel mortgage on the 1927 crop. And it also excluded exhibit C, to the same effect, and excluded the oral testimony of Hinds and others as to the actual knowledge of the plaintiff concerning the said agree-

ment, together with the testimony of the Kannarrs in regard to false representations to induce the giving of the plaintiff's mortgage. In addition to this, the court gave its instruction numbered 3 directing a priority in favor of the plaintiff—practically directing the verdict.

Complaint of these things was made by the intervener and by the defendants, both by motion for new trial and in assignments of error here presented.

We are constrained to agree with defendants and appellants. The district court was in error in these holdings and rulings, and so prejudicially in error that the judgment must be reversed.

It was alleged by the defendants and by the intervener that when the Kannarrs gave plaintiff his mortgage they told him that they had previously pledged the property to the bank. And the Kannarrs testify very positively upon trial that, not only did they so inform the plaintiff, but that they supposed they were giving only a second mortgage to him, he having stated that it was drawn subject to the bank's claim and was a second mortgage. The older Kannarr also testified that at the time he signed he did not have his glasses with him and was unable to read, and that he accordingly relied on the plaintiff to inform him as to the facts.

The court struck out this testimony and directed a verdict in favor of the plaintiff upon the theory, evidently, that the Kannarrs should have known what they were signing, and should not be permitted to dispute the contents of the written instrument. It does not appear that they were unable to read and there is some force to the theory. But there was an intervening circumstance when Kannarr was called upon to act, and we are of the opinion that, since the mortgage was obtained when the signer was without immediate means of reading, and since he depended and relied upon the mortgagee to inform him of the contents of the mortgage and then procured his son to sign, acting somewhat hurriedly in order that he might promptly return the instrument to the mortgagee by mail, the strict

rule should not be applied. Under the circumstances, supposing that the testimony of Kannarr is true, the mortgagee is not to be relieved of the consequences of his duplicity because the mortgagors failed to exercise the last degree of care. Having signed the instrument and promised to have his son sign it, all in dependence upon the mortgagee's statement, Kannarr would naturally go through with his agreement exactly as he did.

The ruling of the court in this connection took from the jury the matter of fraud. The evidence was sufficient to have made a *prima facie* case. It tended to show fraud on the part of the plaintiff, and the determination of the question by the court was an invasion of the province of the jury. "In determining whether a peremptory instruction was justified, the party against whom the verdict is directed is entitled to have every controverted question of fact resolved in his favor, and to have the benefit of every inference that reasonably can be deduced from the facts in evidence." *Schmelzel v. Leecy,* 104 Neb. 672.

The trial court held that the 1926 agreement of the Kannarrs to give the bank a mortgage on their 1927 corn crop was not sufficient, even though the plaintiff was advised of it, to make the bank's mortgage superior to that of the plaintiff. There is plenty of evidence that said promise was made. It appears in exhibit C above referred to—a chattel mortgage for additional security given to the bank by the Kannarrs in December, 1926. It was first received upon trial, and afterwards excluded. And the witness Hinds testified absolutely that the plaintiff had admitted to him that he had actual knowledge of the agreement so contained in said mortgage. The direction contained in the court's instruction numbered 3 was such as to take the question entirely from the jury.

Under such circumstances, it is beyond question that the trial court erred. The defendants and the intervening bank had a right to present the facts stated as an equitable defense and as a basis for the cross-petition which they filed. The defendant or intervener may present any de-

fense, legal or equitable, in any case. The agreement to give a mortgage on the 1927 crop stated expressly that it was to be done on or about the 1st day of May, 1927. Said mortgage was not, in fact, given until the 22d day of October, 1927. But the delay was not sufficient to avoid the promise and to deprive the bank of its equitable right.

While the rule of law undoubtedly is that one may not mortgage a thing not *in esse*, this court has often held that a valid promise may be made in a lease or other contract to give a mortgage upon a crop when it comes into being, and that such promise may be enforced. The case at bar is ruled by the decision of this court in *Weigand v. Hyde*, 109 Neb. 678. In that case it was held as follows: "Where a lease provides that the lessee shall on demand execute a chattel mortgage on the crops to secure the payment of the rent, but lessee fails to do so, and executes to a third person a first chattel mortgage on the same crops, the execution thereof constitutes a fraud on the part of the lessee, as between himself and the landlord, against which a court of equity may grant relief at the suit of the lessor. In such case, the mortgagee, if he had notice of the provisions of the lease, and of the landlord's right thereunder, is not a mortgagee in good faith, and, in an action by the lessor for specific performance of the terms of the lease, the mortgagee's rights will be subordinated to those of the lessor."

And the court further say in the opinion: "It is a well-settled principle that an agreement to give a mortgage for a valuable consideration upon property which is sufficiently specified is in a court of equity regarded as the creation of the mortgage itself. This is held for the reason that equity will treat that as done which ought to be done. And, in such case, a lien will be given precedence over a mortgage or other lien taken by a party who has notice of the rights of the equitable mortgagee." And later it was held by this court, quoting *Weigand v. Hyde*, 109 Neb. 678, and *Skala v. Michael*, 109 Neb. 305, that the principle applies, even though the agreement be made before the property

came into being. *American State Bank v. Keller*, 112 Neb. 761.

It appears, therefore, that there were questions for the jury which the court, by its rulings and by the instruction referred to, refused to present, with the consequent result that the court decided such questions, instead of the jury.

There was some question upon trial as to whether the Hinds State Bank had properly intervened. But this seems to have been abandoned by the plaintiff, and to have stood undecided. However, the case proceeded upon the theory that the bank was a party, and since the parties took this attitude it will be concluded that the bank was duly in the case as an intervener.

For the reasons above stated, the judgment of the lower court must be reversed and the cause remanded, and it is so ordered.

REVERSED.