MILLARD RURAL FIRE PROTECTION DISTRICT NO. 1, APPELLANT, V. CITY OF OMAHA, NEBRASKA, APPELLEE.

409 N.W.2d 574

Filed July 24, 1987. No. 85-826.

Frederick S. Cassman of Abrahams, Kaslow & Cassman, for appellant.

Herbert M. Fitle, Omaha City Attorney, and Charles K. Bunger, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Millard Rural Fire Protection District No. 1 (district) appeals from an order of the district court for Douglas County decreeing the rights, duties, and obligations of the parties regarding the City of Omaha's annexation of property formerly located within the district. We affirm.

The district was organized on March 27, 1952, as a rural fire protection district under the provisions of Neb. Rev. Stat. §§ 35-501 et seq. (Reissue 1952). The original boundaries of the district lie in both Douglas and Sarpy Counties along the western edge of Omaha. The district, which is served by the Millard Volunteer Fire Department, operates two fire stations with eight units of firefighting equipment and four rescue units. The facilities and equipment used by the volunteer fire department are provided by the district, which pays for all expenses incurred in the operation and maintenance of the fire and rescue service, as well as the training of volunteer firefighters.

The operation of the district is funded primarily by revenue raised from an annual tax levied on all real property located in the district. The district had incurred no bond debt to finance its operation until August of 1981, when it issued $890,000 of bonds in order to purchase new equipment and build a fire station. In June of 1983, the district had a second bond issue totaling $2 million, used in part to redeem the remaining bonds outstanding from the first issue and in part to purchase additional equipment and complete the new fire station.

During the period from 1968 to 1984, the city annexed several parcels of land located within the boundaries of the district. As the parcels of land were annexed by the city, they were taken into the jurisdictional limits of the city, removing them from the boundaries of the district and lessening the district's tax base from which to draw tax revenue. When an area is annexed by the city, the city assumes all responsibility for

providing fire protection and related services to that area.

Through 1981, neither the city nor the district made any attempt to negotiate an agreement regarding an adjustment of matters growing out of or connected with the numerous annexations. In April of 1982, attorneys for the district sent a letter to the city requesting that a meeting be held for the purpose of discussing a pro rata assumption by the City of Omaha of the bonded indebtedness of the district. The district and the city met in June and November of 1982 to discuss the annexations by the city and the city's assumption of a percentage of the district's bonded indebtedness. The city made a settlement offer to the district in August of 1983, which was apparently rejected by the district. The district filed a petition in the district court for Douglas County in February of 1984 and an amended petition in December of 1984, pursuant to Neb. Rev. Stat. § 31-766 (Reissue 1984), requesting a declaratory judgment determining the rights, duties, and responsibilities of the parties with respect to the annexed areas. See Neb. Rev. Stat. § 25-21,149 (Reissue 1985). The city answered the district's amended petition, alleging that the district's cause of action was barred by the statute of limitations.

At trial, Terry Jaros, secretary-treasurer for the district, testified that the annexations of areas from the district did not result in a reduction in the district's expenses because the majority of the expenses are fixed or ongoing expenses. Orlan Jurgenson, fire chief of the Millard Volunteer Fire Department, also testified that the annexations had no effect on the department's requirements for manpower, equipment, and fire stations, and there had been no material reduction in the expense of providing fire and rescue services after the annexations. Horton Dahlquist, chief of the City of Omaha Fire Division, was called as a witness for the city and testified that as the size of the fire protection district becomes smaller because of annexations, less equipment and personnel would be needed for fire protection. However, Dahlquist was not sure that the district's need for equipment and firefighters had actually decreased.

In attempting to establish the amount of recovery from the city, the district introduced into evidence schedules prepared by

a certified public accounting firm, outlining the expenses incurred by the district for the fiscal years 1969 through 1984. A percentage was then obtained for each fiscal year by dividing the cumulative annexations by the total tax base plus cumulative annexations. The percentage was then multiplied by the total expenditures of the district for the following fiscal year to obtain the amount of damages for each year. The total combined damages for all years amounted to $360,945.65.

Terence Leaders, who was employed in the city finance department for 16 years and was directly responsible for annexations for 14 years, testified for the city. Leaders contested the method used by the district for calculating any amount due after annexation and outlined the method used by the city to calculate the percentage of bonded indebtedness which the city proposed to assume because of the annexations. Leaders disagreed with the district's method, which failed to include the value of property located in Sarpy County in computing the district's tax base, failed to consider the capital and liquid assets available to the district, and incorrectly considered a compounded effect of the annexations in arriving at its cumulative annexation percentage.

In determining the amount of debt to be assumed by the city as a result of the annexations, the city first calculated the net debt of the district outstanding by subtracting the district's liquid assets (cash and investments) from the amount of the outstanding liabilities (notes payable and bonds payable) of the district. Next, the city calculated the total value of the district's tax base, considering the value of land located in both Douglas and Sarpy Counties. A percentage of valuation was then calculated, dividing the value of the property annexed for each year by the total taxable valuation of the district for each corresponding year. That percentage was applied to the net debt outstanding for each year to arrive at the amount of net debt related to each annexation which was to be assumed by the city. Leaders testified that, although this was the first time the city had negotiated with a fire protection district regarding annexation of a district's property, the method used by the city in calculating the net debt to be assumed was the same procedure used by the city in adjusting the indebtedness

assumed upon partial annexation of a sanitary and improvement district. According to Leaders, the method used was the industry standard and "is simply taking a pro rata share of the outstanding debt of the District as each annexation occurs."

The district court found that each separate annexation gave rise to a separate claim pursuant to § 31-766 and that all claims arising prior to February 10, 1980, were barred by the applicable statutes of limitations. The district court also made the following findings:

4. The fire protection and emergency service provided by the Defendant to such annexed areas is a "liability" assumed by the Defendant pursuant to Section 31-766, Nebraska Revised Statutes.

5. In connection with each such annexation, the incremental reduction of the Plaintiff's tax base, as it relates to producing revenue for operation and maintenance, is balanced or off-set by the corresponding incremental assumption of liability by the Defendant through its assumption of fire protection and emergency service responsibility.

6. In connection with each such annexation, the incremental reduction of the Plaintiff's tax base, as it relates to producing revenue for repayment of indebtedness, is balanced by the corresponding assumption by the Defendant of a pro-rata share of such indebtedness. An equitable means of determining such pro-rata share is to take the amount of the Plaintiff's net debt times the percentage of valuation of the Plaintiff's territory annexed. This formula must be applied separately for each annexation.

7. The method of defining and computing the division of assets and liability outlined in paragraphs 5 and 6, hereinabove, is the method accepted through common usage and practice in Douglas County by affected parties in connection with partial annexations pursuant to Section 31-766, Nebraska Revised Statutes.

The district court ordered that "the Defendant pay the Plaintiff the sum of $11,346.47 in connection with such

annexations occurring from 1980 through 1983. Any claims by Plaintiff for monies from Defendant for such annexations occurring before 1980 are now and forever barred."

The district appeals and assigns error to each of the district court's specific findings.

Section 31-766 provides in relevant part:

> If only a part of the territory within any sanitary and improvement district, any road improvement district, or any fire protection district is annexed by a city or village, the . . . fire protection district . . . and the city or village acting through its governing body *may* agree between themselves as to the equitable division of the assets, liabilities, maintenance, or other obligations of the district for a change in the boundaries of the district so as to exclude the portion annexed by the city or village or *may* agree upon a merger of the district with the city or village. . . . If the district and city or village do not agree upon the proper adjustment of all matters growing out of the annexation of a part of the territory located within the district, either the district or the annexing city or village *may* apply to the district court of the county where the major portion of the district is located for an adjustment of all matters growing out of or in any way connected with the annexation of such territory, and after a hearing thereon the court may enter an order or decree fixing the rights, duties, and obligations of the parties . . . .

(Emphasis supplied.)

Concerning an action commenced under § 31-766, we stated in *City of Bellevue v. Eastern Sarpy County S. F. P. Dist.*, 180 Neb. 340, 343, 143 N.W.2d 62, 64 (1966): "The authority conferred upon the district court by section 31-766 . . . is to adjust matters growing out of the annexation. The statute contemplates that the annexation shall be complete at the time the application is filed." See, also, *Webber v. City of Scottsbluff*, 187 Neb. 282, 188 N.W.2d 814 (1971). The validity of an annexation by a city or village of property located within a fire protection district or sanitary and improvement district does not depend upon compliance with § 31-766. See *Webber v. City of Scottsbluff, supra*. However, § 31-766 "obviously

contemplates a prompt division of the assets and liabilities of the district and the exclusion of the portion annexed from further control by the district," *Sanitary & Improvement Dist. v. City of Ralston*, 182 Neb. 63, 70, 152 N.W.2d 111, 115 (1967), and, if an adjustment of matters arising out of the annexation is sought, either the district or the city must institute proceedings under § 31-766 as soon as it becomes evident that an agreed adjustment cannot be reached. See *Abernathy v. City of Omaha*, 183 Neb. 660, 163 N.W.2d 579 (1968), where we stated that § 31-766 must be construed in the light of Neb. Rev. Stat. §§ 31-764 and 31-765 (Reissue 1984). Section 31-765 provides that a merger of a district and a city or village shall be effective 30 days after the effective date of an ordinance annexing all of the territory within a district. Section 31-764 provides that the trustees of a district shall submit to the city a written accounting of all assets and liabilities of the district within 30 days of the effective date of the merger of the annexed district and the city. We have recognized, therefore, that an action brought under § 31-766 must be commenced within a reasonable time after the annexation of part of a district by a city.

This action was brought in the form of a declaratory judgment to determine the rights, duties, and responsibilities of the parties with respect to the annexed areas. In *OB-GYN v. Blue Cross*, 219 Neb. 199, 202, 361 N.W.2d 550, 553 (1985), we noted that "a declaratory judgment action is sui generis and may involve questions of both law and equity. *S.I.D. No. 32 v. Continental Western Corp.*, 215 Neb. 843, 343 N.W.2d 314 (1983)." See, also, *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 318 N.W.2d 70 (1982). In a declaratory judgment action involving the determination of issues of fact, such issues may be tried and determined as in other civil actions. Neb. Rev. Stat. § 25-21,157 (Reissue 1985); *OB-GYN v. Blue Cross, supra; Larutan Corp. v. Magnolia Homes Manuf. Co.*, 190 Neb. 425, 209 N.W.2d 177 (1973). All declaratory judgment orders and decrees may be reviewed as other orders, judgments, and decrees. Neb. Rev. Stat. § 25-21,155 (Reissue 1985); *OB-GYN v. Blue Cross, supra*. In an appeal of a declaratory judgment action concerning an equity case, the Supreme Court reviews

the trial court's findings of fact de novo on the record. Neb. Rev. Stat. § 25-1925 (Reissue 1985); *OB-GYN v. Blue Cross, supra*. With regard to questions of law involved in an appeal, the Supreme Court has the obligation to reach independent conclusions with respect to those questions. *OB-GYN v. Blue Cross, supra; Ranger Division v. Bayne*, 214 Neb. 251, 333 N.W.2d 891 (1983).

For an assignment of error, the district claims that the district court erred in finding that the statute of limitations barred the district's claims arising prior to 1980. The statute of limitations, if applicable, may be raised and relied on in an equity action. See, *Cape Co. v. Wiebe*, 196 Neb. 204, 241 N.W.2d 830 (1976); *Campbell v. Kirby*, 195 Neb. 610, 239 N.W.2d 792 (1976); *Uptegrove v. Elsasser*, 161 Neb. 527, 74 N.W.2d 61 (1955); *Abels v. Bennett*, 158 Neb. 699, 64 N.W.2d 481 (1954); *Baxter v. National Mtg. Loan Co.*, 128 Neb. 537, 259 N.W. 630 (1935). A defendant may raise any appropriate defense available, whether it be legal or equitable, in any case. *Department of Banking, Receiver v. Wilken*, 217 Neb. 796, 352 N.W.2d 145 (1984); *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982); *Wischmann v. Raikes*, 168 Neb. 728, 97 N.W.2d 551 (1959); *Kelly v. Kannarr*, 118 Neb. 472, 225 N.W. 230 (1929). This rule follows from the fact that Nebraska has abolished all distinctions between actions at law and suits in equity and in their place established one form of action denominated a "civil action." See, Neb. Rev. Stat. § 25-101 (Reissue 1985); *Wischmann v. Raikes, supra*.

Neb. Rev. Stat. § 25-204 (Reissue 1985) states: "Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued." The district court found that Neb. Rev. Stat. §§ 25-206, 25-207, and 25-212 (Reissue 1985) were applicable and each barred any claim of the district prior to 1980. Section 25-206 provides: "An action upon a contract, not in writing, expressed or implied, *or an action upon a liability created by statute*, other than a forfeiture or penalty, can only be brought within four years." (Emphasis supplied.) Section 25-207 provides in part: "The following actions can only be brought within four years: . . . (3) an action for the injury to the

rights of the plaintiff, not arising on contract, and not hereinafter enumerated . . . ." Section 25-212 provides: "An action for relief not hereinbefore provided for can only be brought within four years after the cause of action shall have accrued." No matter which of the above sections is applied to an action commenced under § 31-766, the action must be commenced within 4 years after the effective date of the annexation ordinance. The present action was commenced by the district on February 10, 1984. Therefore, all the district's annexation claims arising prior to February 10, 1980, were barred. The district court did not err in so determining.

The district also assigns as error the district court's findings regarding the division of the assets, liabilities, maintenance, and other obligations of the district. In essence, the district argues that the city should not only have to assume a percentage of the district's bond debt relating to the annexed areas, but should also be required to assume a percentage of the district's ongoing operation and maintenance expenses relating to the entire district. The district ignores the fact that the city has assumed full responsibility for the maintenance and operation of fire and rescue services for the areas annexed by the city. Although the annexation of areas from the district does remove property from the district's tax base, the record shows that the actual value of property in Douglas County remaining within the district rose from approximately $132 million in 1968 to approximately $751 million in 1984. Based on our de novo review of the record, under the circumstances we find that the method of adjustment proposed by the city, that is, a pro rata assumption of the net bonded indebtedness of the district relating to the percentage of valuation of the annexed property, along with assumption of responsibility for providing fire and rescue services to the annexed areas, results in an equitable division of the assets, liabilities, maintenance, and other obligations of the district. In this regard, we reach the same conclusion as that of the district court, and, finding no errors in the record, we affirm the judgment of the district court.

AFFIRMED.