PAPILLION RURAL FIRE PROTECTION DISTRICT, APPELLEE, V.
CITY OF BELLEVUE, A MUNICIPAL CORPORATION, APPELLANT.
739 N.W.2d 162

Filed August 31, 2007.    No. S-06-308.

Frank F. Pospishil and Timothy M. Kenny, of Abrahams, Kaslow & Cassman, L.L.P., for appellant.

Michael N. Schirber, of Schirber & Wagner, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

NATURE OF CASE

The Papillion Rural Fire Protection District (the District) brought an action for declaratory judgment to determine the rights, duties, and obligations of the District and the City of Bellevue (the City). This suit arose as a result of the City's partial annexation of property formerly located within the District. The district court granted the District's motion for summary judgment and entered judgment against the City in an amount which was to be calculated using a formula set forth in the court's order.

The City appealed the district court's decision to the Nebraska Court of Appeals, which dismissed the appeal because the judgment for money was not specified with definiteness and certainty.[1] Following its dismissal of the City's appeal, the Court of Appeals issued a mandate ordering the district court to enter judgment in conformity with the Court of Appeals' opinion. The district court then entered a new order which specified the

---

[1] *Papillion Rur. Fire Prot. Dist. v. City of Bellevue*, 13 Neb. App. lvi (No. A-05-116, May 9, 2005).

amount of damages to be awarded to the District and included a new award for prejudgment interest. The City now appeals.

## BACKGROUND

The District is a rural fire protection district under the provisions of Neb. Rev. Stat. § 35-501 et seq. (Reissue 2004), which is located in Sarpy County, Nebraska. In 1998, the District had issued bonds in the principal sum of $1.5 million. The stated purposes were to "acquir[e] fire fighting equipment and emergency equipment and other fire and rescue equipment and apparatus" and "to pay costs of issuance and underwriting associated with issuance" of those bonds. These bonds are a general obligation of the District payable from the District's tax levy. According to the prospectus for the bonds, the bond issue was the only debt of the District.

Following the issuance of the bonds, the District entered into an agreement with the Papillion Volunteer Fire Department, Inc. (the Volunteers). Under this agreement, the District agreed to purchase fire and rescue apparatus and equipment from the Volunteers for approximately $956,000 and to lease that equipment to the Volunteers for $1 for a period of 5 years with the option to renew the lease term for an additional 5-year period. In 2001, the District and the city of Papillion entered into an interlocal cooperation agreement which created an intergovernmental mutual financing organization to be funded by the District and the city of Papillion. The interlocal agreement provided that the city of Papillion would create a fire department to provide all fire and rescue services for both the city of Papillion and the District, using the District's equipment and apparatus. The District and the city of Papillion agreed to share the expenses of the city of Papillion's fire department. And the District agreed to excuse the partial annexation agreement payments due to the District from the city of Papillion. Following the execution of the interlocal agreement, the District and the Volunteers mutually terminated their agreement.

In December 1999, the City passed, approved, and adopted a series of annexation ordinances which annexed portions of the territory located within the District's service and taxing area. At the time of the annexation, the District, including the annexed

territory, remained subject to a levy for the 1998 bonded indebtedness. Following the 1999 annexation, representatives of the City and the District discussed the appropriate division of assets, liabilities, maintenance, or other obligations of each arising out of the annexation. The parties, however, were unable to reach an agreement.

Thereafter, the District instituted the present action in the district court. In its operative petition, the District sought a declaratory judgment for an adjustment of all matters growing out of or in any way connected with the annexations by the City, and a decree fixing the rights, duties, and obligations of the parties. The District also sought an award of attorney fees, court costs, and other relief as may be appropriate. Discovery in the matter ensued. On August 27, 2004, the City filed a motion to compel the District to fully respond to the City's first set of interrogatories and the City's first request for production of documents. The City alleged in its motion to compel that the District failed to fully respond to its interrogatories. The district court denied the City's motion to compel, and the City filed a motion for reconsideration of the court's decision, which the district court also denied.

On August 13, 2004, the District filed a motion for summary judgment. In its response and supplemental response to the District's motion for summary judgment, the City argued in relevant part that material questions of fact existed as to (1) the exact nature of the District's assets; (2) whether the District's assets should be divided and distributed to the City, or whether the City should be allowed a setoff of the amount of such assets if the court determines the City has any liability to the District; (3) the division of liabilities, maintenance, and other obligations under Neb. Rev. Stat. § 31-766 (Reissue 2004); (4) whether § 31-766 is contradicted by prorating only debt for each partial annexation; and (5) the effect the interlocal cooperation agreement entered into between the District and the city of Papillion, which created a mutual finance organization, has on the allocation under § 31-766.

On January 3, 2005, the court issued an order granting the District's motion for summary judgment. The court stated in part that the City's claim that the allocation formula should include a

valuation of the assets of the District less the bonded debt would result in an absurd result. This is because the City could annex all but a small portion of the District and pay none of the debt associated with the annexation. The court further stated that subsequent to *Millard Rur. Fire Prot. Dist. No. 1 v. City of Omaha*,[2] § 35-508 was amended to allow for a sinking fund to be funded by tax revenues for the District's use for those items set out in the statute. The court found that in dividing the equities, the value of the sinking fund must be considered and that this value should be deducted from the bonded debt in determining the City's liability. Notwithstanding the fact that the court could not determine from the evidence whether a sinking fund exists or its value if it does exist, the court found that it did not give rise to a material issue of fact. The district court then entered judgment against the City based on the calculation of the following formula which was set out in the court's order: *"Bonded debt - (12.4528 % of sinking fund) = (Debt subject to allocation) x 12.4528% = Amount of debt owed by Defendant."*

The City appealed the court's January 3, 2005, order to the Court of Appeals. Citing *Lenz v. Lenz*[3] for the proposition that a judgment must be sufficiently certain in its terms to be able to be enforced in a manner provided by law and a judgment for money must specify with definiteness and certainty the amount for which it is rendered, the Court of Appeals dismissed the City's appeal. The Court of Appeals issued its mandate to the district court ordering it to "without delay, proceed to enter judgment in conformity with the judgment and opinion of this court."

The district court then entered the following journal entry: "Mandate from the Court of Appeals having been received, Judgment entered in conformance with Mandate." The particulars of this judgment, however, are not in the record before us.

The District then filed a motion requesting the district court to enter an order clarifying, interpreting, and correcting the court's January 3, 2005, summary judgment order by specifying

---

[2] *Millard Rur. Fire Prot. Dist. No. 1 v. City of Omaha*, 226 Neb. 50, 409 N.W.2d 574 (1987).

[3] *Lenz v. Lenz*, 222 Neb. 85, 382 N.W.2d 323 (1986).

the amount of money judgment in favor of the District, by determining prejudgment interest, and for such other and further equitable relief as the court deemed just and proper. At the hearing on the District's motion, the District requested that the court take judicial notice of an affidavit of Kevin Edwards, the administrator for the District, which affidavit was dated September 22, 2005. Attached to Edwards' affidavit was a calculation which showed that the City's liability to the District was $84,491.88. The affidavit included notations regarding the District's sinking fund, which were not contained in the affidavit before the court when the original order of summary judgment was entered. The City objected to the court's taking judicial notice of the affidavit. The district court stated that it was going to reserve ruling on the affidavit, however, the record does not reflect a specific ruling on the affidavit. The court did, however, refer to the affidavit in its February 21, 2006, order.

On February 21, 2006, the district court entered an order in which it awarded the District judgment against the City in the amount of $84,491.88, with prejudgment interest at 4.038 percent from October 21, 2004. In its order, the court stated that it viewed the District's September 30, 2005, motion as "one to amend [the court's] judgment and the mandate to make the same certain." The court also noted that Edwards' September 22 affidavit was attached to the District's motion, along with a worksheet showing Edwards' calculation. This calculation indicated that the City owed the District $84,491.88, and attested that any prior sinking fund moneys were accounted for in his calculations and were included in that figure. In response to an argument by the City that the court did not have jurisdiction over the matter, the court stated that pursuant to Neb. Rev. Stat. § 25-2001 (Cum. Supp. 2004), it "has the inherent power to vacate or modify its judgments or orders . . . after the term at which they were made." The court stated that the District filed its motion during the term and concluded that it clearly has the power to revisit its own judgment. The court further stated that once the appeal was dismissed by the Court of Appeals, jurisdiction was revested in the district court, and that the Court of Appeals' mandate and accompanying notation required it to retake jurisdiction and conform its judgment to the Court of

Appeals' order. Thereafter, the City timely perfected the present appeal.

## ASSIGNMENTS OF ERROR

The City's assignments of error, which have been partially consolidated, are that the district court erred in (1) amending and modifying its January 3 and June 16, 2005, orders to comply with the mandate of the Court of Appeals by entering an amended final order on February 21, 2006, and awarding the District a judgment against the City in the amount of $84,491.88 with prejudgment interest at 4.038 percent from October 21, 2004, which amount was not from a clarification of the court's January 3, 2005, order, but from consideration of an affidavit made subsequent to the mandate; (2) granting the District's motion for summary judgment; (3) not applying the provisions of § 31-766 to the partial annexation involved in this matter; (4) not granting the City's motion to compel discovery and motion for partial reconsideration of the City's motion to compel discovery from the District; (5) not following the Court of Appeals' May 9, 2005, disposition and June 13 mandate which fully concluded this litigation; (6) allowing the District prejudgment interest; and (7) taking judicial notice of the untimely Edwards affidavit and erroneously using this affidavit to calculate the judgment entered in favor of the District and against the City.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[4] In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence.[5]

---

[4] *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 730 N.W.2d 376 (2007).

[5] *Id.*

## ANALYSIS

### DISTRICT'S MOTION FOR SUMMARY JUDGMENT

We first address the City's claim that the district court erred in granting the District's motion for summary judgment.

Section 31-766 addresses the division of assets, liabilities, maintenance, or other obligations of a fire protection district when the district is partially annexed by a city or village. Section 31-766 provides in part:

The division of assets, liabilities, maintenance, or other obligations of the district shall be equitable, shall be proportionate to the valuation of the portion of the district annexed and to the valuation of the portion of the district remaining following annexation, and shall, to the greatest extent feasible, reflect the actual impact of the annexation on the ability of the district to perform its duties and responsibilities within its new boundaries following annexation.

Section 31-766 provides further that if the district and city or village do not agree on the proper adjustment of all matters growing out of the partial annexation, the district or the annexing city or village may apply to the district court for an adjustment of matters growing out of the annexation. And under § 31-766, the district court is authorized to enter an order or decree fixing the rights, duties, and obligations of the parties.

We last addressed the allocation of assets, liabilities, maintenance, and other obligations under § 31-766 in *Millard Rur. Fire Prot. Dist. No. 1 v. City of Omaha.*[6] In that case, the Millard Fire Protection District (the Millard District) brought a declaratory action to determine the rights, duties, and responsibilities of the Millard District and the City of Omaha with regard to areas of the Millard District annexed by the City of Omaha. We affirmed on appeal the district court's determination that an equitable method of determining the City of Omaha's assumption of the Millard District's indebtedness was to multiply the Millard District's net debt by the percentage of the valuation of

---

[6] *Millard Rur. Fire Prot. Dist. No. 1 v. City of Omaha, supra* note 2.

the territory annexed. We did not, however, find that this was the only equitable method.

On appeal, the Millard District asserted that the district court incorrectly calculated the division of assets, liabilities, maintenance, and other obligations of the Millard District. The Millard District argued that in addition to assuming a percentage of its bond debt, the City of Omaha should have had to assume a percentage of the Millard District's ongoing operation and maintenance expenses relating to the entire Millard District. We noted that the Millard District ignored the fact that the City of Omaha assumed full responsibility of the operation and maintenance of the annexed areas. We further noted that although the annexation removed property from the Millard District's tax base, the record showed that the actual value of the property in Douglas County remaining within the Millard District had risen from $132 million in 1968 to approximately $751 million in 1984. We then concluded that based on the circumstances of that case, an equitable division resulted from the following method: a pro rata assumption of net bonded indebtedness, "along with assumption of responsibility for providing fire and rescue services to the annexed areas."[7]

In its January 3, 2005, order, the district court entered summary judgment in favor of the District based on the formula set forth in *Millard Rur. Fire Prot. Dist. No. 1*, with one modification. In determining the debt subject to allocation, the court subtracted from the bonded indebtedness the percentage of the annexed property's proportion of the sinking fund. The City argues that the allocation formula in *Millard Rur. Fire Prot. Dist. No. 1* is not controlling in this case and that the district court should take into consideration the assets of the District in order to achieve an equitable adjustment under § 31-766.

In *Millard Rur. Fire Prot. Dist. No. 1*, we were presented with the question of whether an equitable adjustment under § 31-766 required the assumption by the City of Omaha of a percentage of the Millard District's maintenance expenses, in addition to an assumption of a portion of the Millard District's bond debt. As we explained, the City of Omaha did assume a

---

[7] *Id.* at 58, 409 N.W.2d at 579.

percentage of the Millard District's maintenance expenses by taking control of the annexed land. Thus, under the facts in that case, we determined that the equitable division was a pro rata assumption by the City of Omaha of the Millard District's bond debt. In *Millard Rur. Fire Prot. Dist. No. 1*, unlike in the present case, the allocation of the Millard District's assets was not at issue. We conclude that *Millard Rur. Fire Prot. Dist. No. 1* is, therefore, distinguishable.

Section 31-766 specifically includes assets of a fire district in those items to be equitably divided when a fire district is partially annexed. Thus, where there is evidence that the partially annexed fire district has assets, those assets should be considered in determining a proper adjustment of those matters growing out of the annexation.

The evidence in the record now before us indicates that the District has significant assets which were not considered by the district court. We conclude that under the facts presented here, an equitable division under § 31-766 should take into account any assets of the District.

Because the district court did not consider the District's assets and because questions remain as to the extent of the District's assets, we conclude that the district court erred by entering summary judgment in favor of the District. We therefore reverse the order and remand the cause to the district court for further proceedings.

### LIMITATIONS ON DISCOVERY

■ Although we have concluded that the order of summary judgment in favor of the District must be reversed and the cause remanded for further proceedings, we will address the City's assignment of error relating to the City's motion to compel discovery and motion for partial reconsideration of the City's motion to compel discovery from the District. This issue is likely to recur on remand. An appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings.[8]

---

[8] *Tyma v. Tyma*, 263 Neb. 873, 644 N.W.2d 139 (2002).

In denying the City's motion to compel discovery, the district court explained that those issues or items to be discovered must be relevant to the issues being litigated. The district court further explained that in light of *Millard Rur. Fire Prot. Dist. No. 1*, the information the City sought to discover was not relevant. We conclude that to the extent that the information sought to be discovered by the City relates to assets, liabilities, maintenance, or other obligations of the District, the City should be permitted full discovery. We reverse the district court's denials of the City's motion to compel and motion for reconsideration to the extent that the denials conflict with our holding.

### Remaining Assignments of Error

■ Because we have determined that the district court erred by entering summary judgment in favor of the District, we do not address the City's remaining assignments of error. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.[9]

### CONCLUSION

For the reasons discussed, we conclude that questions of material fact exist and that the district court erred in entering summary judgment in favor of the District. We therefore reverse the order and remand the cause for further proceedings. We further conclude that the City should be permitted full discovery of the District's assets, liabilities, maintenance, and other obligations. We reverse the district court's denials of the City's motion to compel and motion to reconsider to the extent that the court's denials conflict with our decision on this issue.

Reversed and remanded for
further proceedings.

---

[9] *Gary's Implement v. Bridgeport Tractor Parts*, 270 Neb. 286, 702 N.W.2d 355 (2005).