Jamie N., on behalf of Madison N., appellant, v.
Kenneth M., defendant and third-party
plaintiff, appellee, and Eric C.,
third-party defendant, appellee.

___ N.W.2d ___

Filed July 7, 2015.    No. A-14-535.

1. **Rules of the Supreme Court: Records: Appeal and Error.** Neb. Ct. R. App. P. § 2-109(D)(1)(f) and (g) (rev. 2012) requires that factual recitations be annotated to the record, whether they appear in the statement of facts or the argument section of a brief.

2. ____: ____: ____. The failure to annotate factual recitations in a brief to the record may result in an appellate court's overlooking a fact or otherwise treating the matter under review as if the represented fact does not exist.

3. **Res Judicata: Collateral Estoppel: Appeal and Error.** The applicability of the doctrine of res judicata and the applicability of claim preclusion are questions of law, as to which appellate courts are obligated to reach a conclusion independent of the determination reached by the court below.

4. **Res Judicata.** The doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

5. **Dismissal and Nonsuit: Limitations of Actions: Words and Phrases.** A dismissal without prejudice means that another petition may be filed against the same parties upon the same facts as long as it is filed within the applicable statute of limitations.

6. **Res Judicata: Judgments: Words and Phrases.** For purposes of res judicata, the definition of a judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form.

7. **Res Judicata: Judgments: Collateral Attack.** Res judicata will not preclude a second suit between the same parties if the forum in which the first action was brought did not have jurisdiction to adjudicate the action; stated another way, judgments entered by a court without jurisdiction are void and subject to collateral attack.

8. **Dismissal and Nonsuit: Judgments.** As a general rule, a dismissal with prejudice is an adjudication on the merits.

9. **Res Judicata: Dismissal and Nonsuit: Jurisdiction.** If a court did not have jurisdiction over a matter it dismissed with prejudice, res judicata would not preclude a second suit between the same parties.

10. **Paternity: Rescission: Time.** Under Neb. Rev. Stat. § 43-1409 (Reissue 2008), a signed, notarized acknowledgment of paternity may be rescinded within the earlier of (1) 60 days or (2) the date of an administrative or judicial proceeding relating to the child.

11. **Paternity.** After the rescission period contained in Neb. Rev. Stat. § 43-1409 (Reissue 2008) ends, a notarized acknowledgment is considered a legal finding and legally establishes paternity in the person named in the acknowledgment as the father.

12. ____. A finding that an individual is not a biological father is not the equivalent of a finding that an individual is not the legal father.

13. **Parties: Jurisdiction: Waiver.** The presence of necessary parties is jurisdictional and cannot be waived by the parties.

14. **Parties: Jurisdiction.** If necessary parties to a proceeding are absent, the district court has no jurisdiction to determine the controversy.

15. **Parties: Words and Phrases.** An indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

16. **Dismissal and Nonsuit: Parties.** A dismissal based upon a failure to join a necessary party is a dismissal of the action without prejudice.

17. **Parent and Child: Due Process.** Both parents and their children have cognizable substantive due process rights to the parent-child relationship, which rights protect the parent's right to the companionship, care, custody, and management of his or her child, and they also protect the child's reciprocal right to be raised and nurtured by a biological or adoptive parent.

18. **Child Support: Public Policy.** The public policy of this state provides that parents have a duty to support their minor children until they reach majority or are emancipated.

19. **Parent and Child: Child Support.** The obligation of support is a duty of a legally determined parent.

20. **Paternity: Child Support: Parties.** The legal father of a child is a necessary or indispensable party to an action to determine paternity and place support obligations on another man.

21. **Judgments: Collateral Estoppel.** Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate.

22. ____: ____. Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

23. **Collateral Estoppel.** Issue preclusion applies only to issues actually litigated.

24. ____. Issue preclusion protects litigants from relitigating an identical issue with a party or his privy and promotes judicial economy by preventing needless litigation.

25. **Appeal and Error.** An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Reversed and remanded for further proceedings.

David J. Reed, of Jorgenson & Reed, L.L.C., and, on brief, W. Gregory Lake for appellant.

Charles L. Grimes, of Vacanti Shattuck, for appellee Eric C.

Inbody, Pirtle, and Bishop, Judges.

Bishop, Judge.

Jamie N. filed the present action on behalf of her minor child, Madison N., born in July 2011, against Kenneth M. and Eric C. in Sarpy County District Court, seeking to rescind Kenneth's acknowledgment of paternity of Madison and to establish Eric's paternity of Madison (genetic testing established that Eric is Madison's biological father). Kenneth moved for summary judgment, seeking that the district court

rescind his acknowledgment of paternity; the district court granted his motion and rescinded his acknowledgment. In a subsequent order, the district court granted Eric's motion for summary judgment, concluding that Jamie's action to establish his paternity was barred by res judicata and issue preclusion because both the State and Jamie had previously filed complaints against Eric, to establish his paternity, that had been dismissed. Jamie appeals from the order of summary judgment in favor of Eric.

## FACTUAL BACKGROUND

Jamie and Kenneth were involved in an intimate relationship between September and November 2010. According to Kenneth, he did not date or have a relationship with anyone else during this time and it was his understanding that Jamie also was not in a relationship with anyone else at that time. Kenneth averred that Jamie informed him she was pregnant in the fall of 2010 and told him he was the father and that he had no reason to disbelieve her.

Jamie gave birth to Madison in July 2011. Two days after Madison's birth, Kenneth signed a notarized acknowledgment of paternity. Kenneth claimed that he would not have signed the acknowledgment of paternity had he known it was possible he was not the father.

In November 2011, Kenneth and Jamie obtained a DNA test demonstrating that he was not the father of Madison.

According to Jamie, at the time Madison was conceived, Jamie was involved in sexual relationships with both Kenneth and Eric, but believed Kenneth had a better chance of being the father than Eric and "mistakenly" told Kenneth he was the father. After Jamie learned she had "made a mistake" in determining that Kenneth was Madison's father, she contacted the State of Nebraska to initiate an action on behalf of Madison against Eric. Before the State commenced the action, Eric submitted to a DNA test, which found a 99-percent probability that he was the father of Madison.

Jamie claimed that neither Kenneth nor Eric has had any substantial contact with Madison during her life; Kenneth had seen her twice, and Eric had seen her once. Madison has numerous health issues, and Jamie believed that establishing Eric as Madison's father would help ensure Madison receives proper medical treatment, because doctors would know her full family medical history.

## PROCEDURAL BACKGROUND

*First Action.*

On September 19, 2012, the State of Nebraska filed a paternity complaint on behalf of Madison against Eric in Sarpy County District Court (first action), pursuant to its authority contained in Neb. Rev. Stat. §§ 43-512.03 (Cum. Supp. 2014) and 43-512.04 (Reissue 2008). Jamie was named as a third-party defendant to the action. Kenneth was not a party to the action. According to the complaint, the State alleged that "[a]nother individual is on the birth certificate, but was excluded by private genetic testing," and that genetic testing showed that Eric had at least a 99-percent probability of paternity. The complaint sought to establish paternity as to Eric and sought child support.

On December 18, 2012, the Sarpy County District Court entered a "Child Support Journal Entry"; the entry states, "This matter came on for hearing" before the district court referee on December 13. The order stated that neither Jamie nor Eric appeared at the hearing before the referee, nor did their counsel. The State appeared at the hearing before the referee and, without specifying why, made an "oral motion to dismiss the paternity action," which the referee sustained; the referee then dismissed the matter "with prejudice." The district court found the referee's recommendations were proper and approved and adopted them by its December 18 order. No appeal was taken from this order.

*Second Action.*

[1,2] Both the district court and Eric refer to another paternity action filed by Jamie against Eric, in Douglas County.

Eric represents in his brief that Jamie filed this complaint in January 2013 and that such complaint was dismissed without prejudice on April 1, 2013, as it was determined that none of the parties resided in Douglas County. However, we note that the pleadings and dismissal from the Douglas County action are not in our record. Neb. Ct. R. App. P. § 2-109(D)(1)(f) and (g) (rev. 2012) requires that factual recitations be annotated to the record, whether they appear in the statement of facts or the argument section of a brief. The failure to do so may result in an appellate court's overlooking a fact or otherwise treating the matter under review as if the represented fact does not exist. *Sturzenegger v. Father Flanagan's Boys' Home*, 276 Neb. 327, 754 N.W.2d 406 (2008). The absence of these documents from our record is addressed further in our analysis.

*Third Action.*

Jamie filed a "Complaint to Establish Paternity, Custody & Support" against Eric in Sarpy County District Court on March 5, 2013. Kenneth was not a party to the action. Eric filed a motion to dismiss on March 15, alleging that a previous paternity action in Sarpy County had been dismissed with prejudice, that a person not party to the action had signed an acknowledgment of paternity, and that another paternity action was pending against Eric by Jamie in Douglas County. On March 29, the district court for Sarpy County dismissed the complaint because "an action . . . filed in the District Court [for] Sarpy County containing the same parties and the same request for relief has been dismissed with prejudice."

*Current Action.*

On August 20, 2013, Jamie filed a "Complaint to Rescind Notarized Acknowledgement of Paternity and Complaint to Establish Paternity" against both Kenneth and Eric in Sarpy County District Court. According to this complaint, she brought the action "to rescind the notarize[d] acknowledgment of paternity signed by . . . Kenneth . . . , pursuant to Neb.

Rev[.] Stat. §43-1409 [(Reissue 2008)], and to establish custody and support against . . . Eric."

Jamie alleged two causes of action. Her first cause of action alleged that "[d]ue to a material mistake of fact . . . , Kenneth . . . signed a notarized acknowledgment of paternity at the birth of [Madison]," and that the time period for rescission had ended. Jamie also alleged a second cause of action, seeking to establish Eric's paternity as well as custody and child support. Jamie prayed that the court enter an order rescinding Kenneth's notarized acknowledgment of paternity, establish Eric as the father of Madison, and determine custody and support.

Eric filed a motion to dismiss on September 26, 2013, based upon the prior dismissals of the two other paternity actions initiated in Sarpy County and the third action, initiated in Douglas County. A hearing on Eric's motion to dismiss was held on October 21, and the court took the matter under advisement. Although our record does not reveal the court's specific ruling on this motion, it is a moot issue in light of the court's later decision to dismiss Jamie's claims against Eric pursuant to his motion for summary judgment.

Jamie filed an amended complaint on October 28, 2013, containing the same two causes of action as her initial complaint, and added a third cause of action, alleging that "pursuant to . . . §43-1409 and [Neb. Rev. Stat.] §43-1412.01 [(Reissue 2008)] the State of Nebraska is discriminating against individuals who have children born in wedlock and out of wedlock, thus violating [Jamie's] equal protection rights under the United States Constitution."

On November 26, 2013, Eric filed a motion for summary judgment, alleging that Jamie's complaint "must be dismissed with prejudice as res judicata." On December 5, Kenneth filed a motion for summary judgment. (Kenneth's answer is not in our record, but apparently both he and Jamie agreed that his acknowledgment was a mistake and sought its rescission.) A hearing on both motions was held on December 30.

On January 29, 2014, the court entered an opinion and order. In that order, the court found that Kenneth met his burden to establish he signed the acknowledgment based on fraud, duress, or material mistake of fact and that a DNA test confirmed that Kenneth was not Madison's biological father, and the court granted his motion for summary judgment. The court ordered that the acknowledgment of paternity signed by Kenneth be rescinded.

The court next found that Eric did not meet his burden to show he was entitled to summary judgment, because the first action was a paternity action dismissed on the State's motion and the second was an action brought by Jamie in her own name, while the present action was brought by Jamie on behalf of Madison. The court also found there were genuine issues of material fact precluding judgment as a matter of law.

On April 1, 2014, Eric again filed a motion for summary judgment. Jamie filed an objection to this motion on April 8, because Eric "already had his Motion for Summary Judgment heard and denied."

A hearing on Eric's motion was held on April 11, 2014. The court received into evidence Eric's affidavit and certified copies of the complaints and orders of dismissal from the first action and third action, mentioned above.

The court entered an opinion and order on May 21, 2014, granting Eric's motion for summary judgment. The court found that the instant case against Eric was barred both by res judicata and by issue preclusion, because "[t]he issue of paternity was previously brought in two Sarpy County cases and a Douglas County case," the allegations contained in those cases were the same as in the instant case, and "[t]he previous cases were all dismissed and the Sarpy [C]ounty actions were dismissed with prejudice, a final judgment on the merits."

Jamie timely filed an appeal from the May 21, 2014, order.

## ASSIGNMENTS OF ERROR

Jamie assigns as error on appeal, summarized and restated, that the district court erred (1) in granting Eric's motion for summary judgment and (2) in failing to hear her constitutional claim of discrimination under the Equal Protection Clause.

## STANDARD OF REVIEW

[3] The applicability of the doctrine of res judicata and the applicability of claim preclusion are questions of law, as to which we are obligated to reach a conclusion independent of the determination reached by the court below. See *Millennium Laboratories v. Ward*, 289 Neb. 718, 857 N.W.2d 304 (2014).

## ANALYSIS

The problem in the instant case arose as a result of the September 19, 2012, paternity action filed by the State on behalf of Madison against Eric—despite Kenneth's status as Madison's legal father—which action was dismissed "with prejudice" pursuant to the State's oral motion to dismiss (without explanation or request that such dismissal be with prejudice). As a result of that dismissal and the court's use of the words "with prejudice," Eric contends that all subsequent actions against him to establish his paternity of Madison are forever barred by res judicata; the district court agreed, dismissing the instant action on the grounds of res judicata and issue preclusion. We begin by examining general res judicata principles and whether the dismissal in the paternity action filed by the State was actually an adjudication on the merits by a court of competent jurisdiction.

[4] The doctrine of res judicata, or claim preclusion, bars the relitigation of a matter that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013).

There is no question that the same parties and privies were involved in the current action and the previous two actions filed in Sarpy County, by the State on behalf of Madison against Jamie and Eric in 2012 and by Jamie on behalf of Madison against Eric in March 2013. Both prior Sarpy County actions sought to establish the paternity and support of Madison as to Eric, as did the instant action. Those two prior actions were final judgments, as both cases were dismissed by the district court in which they were filed.

[5] To the extent that the district court and Eric took note of another paternity action filed by Jamie against Eric in Douglas County that was dismissed "without prejudice," brief for appellant at 7, our record contains no evidence of those court proceedings. However, a dismissal "without prejudice" would not have been a judgment on the merits for purposes of res judicata. A dismissal without prejudice means that another petition may be filed against the same parties upon the same facts as long as it is filed within the applicable statute of limitations. See *Dworak v. Farmers Ins. Exch.*, 269 Neb. 386, 693 N.W.2d 522 (2005). Accordingly, the Douglas County action has no bearing on our res judicata analysis and we focus instead only on the two prior Sarpy County actions.

[6,7] We begin by considering whether the State's 2012 action and Jamie's March 2013 action were dismissed "on the merits" by a court of competent jurisdiction. For purposes of res judicata, the definition of a judgment on the merits is one which is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form. See *Kerndt v. Ronan*, 236 Neb. 26, 458 N.W.2d 466 (1990). Res judicata will not preclude a second suit between the same parties if the forum in which the first action was brought did not have jurisdiction to adjudicate the action; stated another way, judgments entered by a court without jurisdiction are void and subject to collateral attack. *Young, supra.*

[8,9] In the first action, filed by the State, the State orally moved that the referee dismiss its complaint. There is no indication as to why the State moved to dismiss or that it sought

dismissal with prejudice. Nevertheless, the Sarpy County District Court adopted the referee's grant of the State's motion to dismiss—with prejudice. As a general rule, a dismissal with prejudice is an adjudication on the merits. See *Simpson v. City of North Platte*, 215 Neb. 351, 338 N.W.2d 450 (1983). However, if the court did not have jurisdiction over the matter, res judicata would not preclude a second suit between the same parties. See, *Young, supra*; *Simpson, supra*.

[10-12] Both the State's action in 2012 and Jamie's action in March 2013 against Eric sought to establish his paternity and support of Madison. However, glaringly absent from both actions was the joinder of Kenneth as a party, who at the time both of those actions were filed was the legal father of Madison. Kenneth had signed a notarized acknowledgment of paternity of Madison 2 days after her birth. A signed, notarized acknowledgment of paternity may be rescinded within the earlier of (1) 60 days or (2) the date of an administrative or judicial proceeding relating to the child. See Neb. Rev. Stat. § 43-1409 (Reissue 2008). After this rescission period ends, a notarized acknowledgment "is considered a *legal finding*." See *id*. (emphasis supplied). The Nebraska Supreme Court has interpreted this statutory section to mean that an acknowledgment that has not been rescinded during one of the time periods mentioned above "legally establishes paternity in the person named in the acknowledgment as the father." *Cesar C. v. Alicia L.*, 281 Neb. 979, 986, 800 N.W.2d 249, 255 (2011). There was no indication in this case that either Jamie or Kenneth rescinded the acknowledgment within the statutory rescission period, and no proceeding relating to Madison was noted during the rescission period. Thus, at the times the State initiated its proceedings against Eric in September 2012 and Jamie initiated her proceedings against Eric in March 2013, Kenneth's notarized acknowledgment had already legally established his paternity as to Madison. In other words, the State and Jamie were attempting to establish paternity against another individual, without notice to or inclusion of Madison's legal father. Although the State filed

its initial complaint to establish paternity against Eric after genetic testing demonstrated that he was the biological father and that Kenneth was not the biological father, "a finding that an individual is not a biological father is not the equivalent of a finding that an individual is not the legal father." *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 122, 846 N.W.2d 257, 268 (2014). Apparently, both the State and Jamie were operating under an assumption that genetic testing alone was sufficient to file a complaint for paternity against Eric—but all the while, Kenneth was legally determined to be the father of the child at issue. Kenneth's status as Madison's legal father remained in full force and effect until the district court in the instant case granted the acknowledgment's rescission on January 29, 2014.

[13-16] At no point prior to the instant case was Kenneth made a party to any of the prior proceedings. The presence of necessary parties is jurisdictional and cannot be waived by the parties. See *Pestal v. Malone*, 275 Neb. 891, 750 N.W.2d 350 (2008). If necessary parties to a proceeding are absent, the district court has no jurisdiction to determine the controversy. *Id.* An indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *Holste v. Burlington Northern RR. Co.*, 256 Neb. 713, 592 N.W.2d 894 (1999). See, also, Neb. Rev. Stat. § 25-323 (Reissue 2008). "[I]t is clear that a dismissal based upon a failure to join a necessary party is a dismissal of the action without prejudice." *Carlson v. Allianz Versicherungs-AG*, 287 Neb. 628, 639, 844 N.W.2d 264, 272 (2014), *cert. denied* ___ U.S. ___, 135 S. Ct. 437, 190 L. Ed. 2d 328. Thus, if Kenneth, as Madison's legal father, was a necessary party to the prior actions filed by the State and Jamie against Eric, the dismissals in those cases would not have been on the merits, but,

rather, for the reason that those courts did not have jurisdiction over the actions. And, as stated above, res judicata will not preclude a second suit between the same parties if the forum in which the first action was brought did not have jurisdiction to adjudicate the action. See *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013).

[17-19] Both parents and their children have cognizable substantive due process rights to the parent-child relationship. *Stacy M. v. Jason M.*, 290 Neb. 141, 858 N.W.2d 852 (2015). These rights protect the parent's right to the companionship, care, custody, and management of his or her child, and they also protect the child's reciprocal right to be raised and nurtured by a biological or adoptive parent. *Id*. The public policy of this state provides that parents have a duty to support their minor children until they reach majority or are emancipated. See *id.* The obligation of support is a duty of a legally determined parent. *Id.* Kenneth, so long as he was established as Madison's legal father by virtue of his unrescinded acknowledgment, had a right to the care, custody, and management of Madison and also had a duty of support. See *id*. Any action attempting to establish another person as Madison's father certainly would have impacted Kenneth's rights and duties as Madison's legal father.

Other jurisdictions have held that the legal father of a child is a necessary party to an action to determine paternity and place support obligations on another man. For example, in a case with strikingly similar facts to the instant case's, *In re Paternity of K.L.O.*, 816 N.E.2d 906 (Ind. App. 2004), a mother and her boyfriend executed a paternity affidavit when the child was born, which execution legally established the boyfriend as the child's father. Later, the mother asked a second man to take a paternity test, the results of which revealed a probability of over 99 percent that he was the child's biological father. The mother then filed a paternity action against the biological father, but the trial court dismissed the action because the boyfriend had not been joined as a party. The mother filed a second paternity petition, alleging that the

boyfriend was the child's father, in an attempt to disestablish the boyfriend's paternity. The trial court dismissed the second petition after a DNA test revealed that the boyfriend was not the child's biological father. The mother then filed a third petition to establish paternity, alleging for a second time that the biological father was the child's father. The biological father filed a motion to dismiss the petition because the boyfriend was a necessary party that had not been joined in the action, which motion the trial court denied. However, on appeal, the Indiana Court of Appeals reversed, concluding that the boyfriend was still the child's legal father, because the paternity affidavit had not been rescinded or set aside. Thus, the boyfriend at all times remained the legal father of the child and, as such, should have been joined as a necessary party to the biological father's paternity action. Following that precedent, in *In re Paternity of N.R.R.L.*, 846 N.E.2d 1094 (Ind. App. 2006), the Indiana Court of Appeals held that a child's legal father (by virtue of execution of a paternity affidavit at the child's birth) was a necessary party to a paternity action filed by the child's biological father. The biological father had not named the legal father as a party to the action; nor had he shown that the legal father's paternity affidavit had been set aside or rescinded.

The Florida Supreme Court also has held that the legal father of a child is an indispensable party to a paternity action against another man. See *Florida Dept. of Revenue v. Cummings*, 930 So. 2d 604 (Fla. 2006). In that case, the State of Florida filed an action against the biological father of a child without joining the child's legal father (by virtue of being married to the child's mother at the time of the child's birth). The Florida Supreme Court reasoned that such a paternity action would "'certainly' impact the legal father's ability to assert his right to a host of interests that lie at the heart of the parent-child relationship"; it would affect the legal father's rights to the care, custody, and control of the child and would remove his name from the child's birth certificate. *Id.* at 608. The court therefore concluded that a legal father's

material interests were necessarily impacted by the paternity action filed by the State and that thus, he was an indispensable party.

[20] In the instant case, two Sarpy County paternity actions were previously filed against Eric, one by the State and one by Jamie, neither of which joined Kenneth as a party. There was no way the trial court in either of those cases could have decided the issue of Eric's paternity and support as to Madison without affecting the interests of Kenneth as Madison's legal father. As such, Kenneth was a necessary or indispensable party to those actions. The presence of necessary parties is jurisdictional and cannot be waived by the parties. See *Pestal v. Malone*, 275 Neb. 891, 750 N.W.2d 350 (2008). If necessary parties to a proceeding are absent, the district court has no jurisdiction to determine the controversy. *Id.* Because Kenneth was a necessary party who was not joined to the previous actions, the court in both prior actions did not have jurisdiction over the actions. Res judicata will not preclude a second suit between the same parties if the forum in which the first action was brought did not have jurisdiction to adjudicate the action. See *Young v. Govier & Milone*, 286 Neb. 224, 835 N.W.2d 684 (2013). As such, the instant action against Eric was not barred by res judicata and the district court erred in dismissing Jamie's complaint for paternity against Eric.

[21-24] The district court also concluded that the instant action was barred by issue preclusion. Issue preclusion bars the relitigation of a finally determined issue that a party had a prior opportunity to fully and fairly litigate. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Id.* Issue preclusion applies only to issues actually litigated. *Id.* Issue preclusion protects

litigants from relitigating an identical issue with a party or his privy and promotes judicial economy by preventing needless litigation. *Id*. As discussed above, because Kenneth was not joined as a party to any of the prior actions to establish Eric's paternity and because Kenneth's acknowledgment of paternity had not been rescinded, there was not an opportunity to fully and fairly litigate the issue of Eric's paternity in the prior actions. We thus conclude the instant action against Eric is not barred by issue preclusion.

[25] In light of our conclusions that the district court erred in granting summary judgment in favor of Eric and that the cause must be remanded for further proceedings, we need not address Jamie's remaining assignment of error regarding the court's failure to address her constitutional claim. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the controversy before it. *Papillion Rural Fire Prot. Dist. v. City of Bellevue*, 274 Neb. 214, 739 N.W.2d 162 (2007).

## CONCLUSION

Because Kenneth was previously established as Madison's legal father but was not joined in any of the prior paternity actions filed against Eric, the dismissals in those cases were not on the merits by a court of competent jurisdiction, and thus, res judicata and issue preclusion did not bar the current action to establish paternity of Madison as to Eric once Kenneth's acknowledgment was rescinded. We therefore reverse the court's entry of summary judgment and remand the cause for further proceedings against Eric. Eric's motion for attorney fees on appeal is overruled.

Reversed and remanded for further proceedings.