352 N.W.2d 145 (1984)
217 Neb. 796
DEPARTMENT OF BANKING AND FINANCE OF the STATE OF NEBRASKA, Receiver for Commonwealth Savings Company, Appellant,
v.
Chris R. WILKEN, Jr., doing business as Suite 9 Lounge, Appellee.
No. 83-486.
Supreme Court of Nebraska.
July 6, 1984.
*146 Baylor, Evnen, Curtiss, Grimit & Witt, Lincoln, for appellant, and, on brief, Kenneth S. Copple, and Robert B. Creager, Lincoln.
*147 Richard H. Williams of Ryan & Williams, P.C., Lincoln, for appellee.
KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ., and COLWELL, District Judge, Retired.
COLWELL, District Judge, Retired.
Plaintiff-appellant, the Department of Banking and Finance of the State of Nebraska, Receiver for Commonwealth Savings Company (Commonwealth), appeals the dismissal of its suit to recover rental payments from defendant-appellee, Chris R. Wilken, Jr., doing business as Suite 9 Lounge. A jury trial was waived. The trial court made a general finding for defendant. We reverse with directions to enter judgment for plaintiff.
There is no dispute of the evidence relevant to the pleadings. In April of 1977 Commonwealth, then known as The Commonwealth Company, entered into a rental agreement with Wilken. The leasehold premises consisted of a restaurant and lounge in the Belmont Plaza Shopping Center, then owned by Commonwealth. The lease, although dated June 15, 1977, was executed in April so that Wilken could submit it to the Nebraska Liquor Control Commission (Commission) in support of his application for a liquor license. At the time the lease was executed, paragraph 6(b), providing additional rental payments based upon a percentage of gross sales, was stricken because Wilken was concerned about its legality and acceptability to the Commission. At that time Sumner Copple, Commonwealth's president and representative in the lease negotiations, told Wilken that he would refer this legal question to his attorney and that if rental payments based upon a percentage of sales were determined to be lawful, Commonwealth would attach an addendum to the lease requiring such payments. Commonwealth concluded it was a lawful provision; Wilken signed the addendum and filed the lease with the Commission. The addendum provides:
6(b) In addition to such minimum rental, an amount per year equal to 5 (5)% of annual gross sales made on and from the premises in excess of $200,000.00 to be apid [sic] on a quarterly basis on or before the 10th day after the expiration of each three month period of each lease year.
Wilken paid all monthly minimal rentals; however, he paid no rentals for the years 1978, 1979, or 1980 based upon a percentage of sales, and Commonwealth demanded none until 1981 when it received the results of an audit upon the businesses in the Belmont Plaza Shopping Center. The audit showed that Wilken's establishment had gross sales of $362,523.50 in 1978, $412,063.39 in 1979, and $420,247.12 in 1980. The total additional rent based upon the addendum was $29,741.71.
On November 6, 1981, Commonwealth filed this suit against Wilken, seeking the amounts due on the percentage rental requirement. By his answer Wilken claimed these defenses: (1) The addendum was void, pursuant to the statute of frauds, Neb.Rev.Stat. § 36-105 (Reissue 1978), since Commonwealth had not signed it; (2) The percentage rental requirement would, in effect, make Commonwealth a partner in Wilken's business and thereby violate the requirement that the license be held as Wilken's personal privilege under Nebraska statutes and the rules of the Commission; and (3) Commonwealth's laches barred its right to recovery, if any.
The findings of the court in a law action in which a jury is waived have the effect of a verdict of the jury and will not be disturbed on appeal unless clearly wrong. Stauffer v. Wilson, 182 Neb. 129, 153 N.W.2d 454 (1967).
In order to recover on an action for a breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with the conditions precedent which activate the defendant's duty. See, Pinkerton v. Leonhardt, 184 Neb. 430, 168 N.W.2d 272 (1969); Lange Bldg. & Farm Supply v. *148 Open Circle "R", 216 Neb. 1, 342 N.W.2d 360 (1983).
The evidence clearly shows that Commonwealth proved the elements of its cause of action. The question then becomes whether Wilken established a defense.
The first defense asserted by Wilken is that the lease violates the statute of frauds, § 36-105:
Every contract for the leasing for a longer period than one year, or for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made.
(Emphasis supplied.)
There is no question but that Wilken signed the addendum and that he knew it was a part of the original lease. Wilken's contention is that Commonwealth did not sign it as a party because only the typed name "THE COMMONWEALTH COMPANY" appeared following the language of the addendum.
Affixing one's handwritten signature, however, is not the only method by which a paper writing may be considered as being signed within the meaning of the statute of frauds. As long ago as Lord Ellenborough's opinion in Schneider and Another against Norris, 2 M. & S. 286, 105 Eng.Rep. 388 (1814), it has been recognized that a printed name may constitute a sufficient signing under the statute of frauds, provided that it is recognized by the party sought to be charged.
Hansen v. Hill, 215 Neb. 573, 579, 340 N.W.2d 8, 12 (1983).
The uncontradicted testimony of Copple was that the typed name "THE COMMONWEALTH COMPANY" on the addendum was placed there by his secretary at his direction. There is no merit to this first defense.
Wilken's second defense is that the addendum violates Nebraska statutes and the rules of the Commission, particularly the following: "A license shall be purely a personal privilege, good for not to exceed one year after issuance unless sooner revoked as in this act provided, and shall not constitute property...." (Emphasis supplied.) Neb.Rev.Stat. § 53-149 (Reissue 1978).
"Any license, covering premises financed or operated on a percentage or share of the business basis, will be considered a partnership between the parties involved insofar as the rights and duties of the licensee of record under his license are concerned." (Emphasis supplied.) Nebraska Liquor Control Commission Rule 20 (1975).
No licensee or partner, principal, agent, or employee of any Bottle Club or Retail Liquor License shall permit any other person not licensed or included as a partner, principal, or stockholder of any Bottle Club or Retail Liquor License to participate in the sharing of profits or liabilities arising from any Bottle Club or Retail Liquor License. (Rule 20, 53-1,100).
Nebraska Liquor Control Commission Rule 14(E) (1979).
"Only the licensee may receive the proceeds resulting from the sale or dispensing of alcoholic liquors within the licensed premise except where otherwise provided for by the provisions of the Nebraska Liquor Control Act." Nebraska Liquor Control Commission Rule 16F (1978).
Wilken's theory is that such rental payments unlawfully create an interest in his liquor license in favor of Commonwealth.
The Commission has power to adopt rules and regulations, Neb.Rev.Stat. § 53-119 (Reissue 1978), and they have authority of law if enacted within the agency's authority. Douglas County Welfare Administration v. Parks, 204 Neb. 570, 284 N.W.2d 10 (1979). Deference is accorded to the agency's interpretation of those regulations unless plainly erroneous or inconsistent. Columbus Community Hospital, Inc. v. Califano, 614 F.2d 181 (8th Cir.1980).
*149 The affidavit of the Commission's executive director establishes that the Commission does not interpret its rules to prohibit a provision in a building lease whereby the lessor receives a percentage of the licensee's annual gross sales above a specified amount.
The addendum is a restatement of a similar provision (paragraph 6(b)) in the original lease, and it is referenced in paragraph 6(a)(v) as "[t]he additional rental set forth in subparagraph (b) of this paragraph 6..." Such an agreement is a common rental provision in commercial leases housing sales businesses.
The addendum was nothing more than an agreement to pay rent for the demised premises in addition to the agreed minimal annual rental of $11,835.72 payable monthly. Such additional rental liability, and its amount, was conditioned on the gross sales being more than $200,000 annually and the application of the agreed formula. Commonwealth had no other interest in the business being lawfully conducted by Wilken on the premises, except as lessor. It had no share, claim, interest, or responsibility in either the management, profits, losses, or distribution of sale proceeds, and there is no evidence that the addendum created a partnership between the parties. Receiving a share of profits as rent does not create a partnership. See Garrett v. Republican Publishing Co., 61 Neb. 541, 85 N.W. 537 (1901). Wilken's second defense fails.
Wilken's final defense is that Commonwealth's laches should bar its recovery. The defense of laches is an equitable one, and its role in a suit upon the breach of a contract which is governed by a 5-year statute of limitations is of very limited scope. Heese v. Wenke, 161 Neb. 311, 73 N.W.2d 223 (1955). The common-law rule is that equitable defenses cannot be used to defeat an action at law based upon contract; however, we have not accepted that position, but, on the contrary, we have held that any defense, whether it be legal or equitable, may be set up in any case. Kelly v. Kannarr, 118 Neb. 472, 225 N.W. 230 (1929).
The defense of "[l]aches does not grow out of the mere passage of time. It is founded upon the inequity of enforcing a claim where there has been a change in the condition or relations of the property or parties." Platte Valley Bank v. Lemke, 141 Neb. 218, 225, 3 N.W.2d 396, 399 (1942). Wilken neither asserts nor proves that the 3- or 4-year delay by Commonwealth in demanding payment in any way prejudiced him. As such, the defense is unproved.
Wilken failed to present any credible evidence in support of his three defenses, and plaintiff was entitled to judgment as a matter of law. The judgment for defendant was clearly wrong, and it is set aside. The district court is directed to enter judgment for plaintiff in the sum of $29,741.71, plus interest and costs.
REVERSED AND REMANDED WITH DIRECTIONS.