REQUESTED BY: Forrest D. Chapman, Executive Director, Nebraska Liquor Control Commission
This opinion is written in response to your request for a formal opinion on whether the Arts and Humanities Focus Program ("Arts Program") of Lancaster County School District 0001, a/k/a Lincoln Public Schools, originally proposed to be located in the Stacy building at Eighth and P Streets, Lincoln, Nebraska, is a "school" under or within the meaning of Neb. Rev. Stat. § 53-177, or Commission Rule 237-LCC2-012.01.
 Background
Pending before the Liquor Control Commission ("Commission") is a Petition For Declaratory Ruling ("Petition") on 237LCC-1-NAC 2.012.01. The Petitioners request that the Commission issue a declaratory ruling that the proposed satellite arts program of Lincoln Public Schools ("LPS") to be located within the Stacy Building is not a "school" under NAC 237-LCC 2.012.01 or Neb. Rev. Stat. § 53-177. The Petition states that several buildings within 150 feet of the proposed satellite arts program have existing liquor licenses and have space which is suitable for lease for future licensed premises. The Petition further states that if the satellite arts program is deemed a "school" for purposes of 237LCC-NAC 2.012.01 and Neb. Rev. Stat. § 53-177, the value of properties within 150 feet of the proposed arts program will be severely diminished, undermining the development of the Haymarket District as a whole. Finally, the Petition states that the business owners, merchants, and developers in the Haymarket District welcome the addition of the Arts Program, and that LPS does not object to the present or future use of surrounding premises within 150 feet of the satellite arts program for the manufacture, distribution or sale of alcoholic beverages under the Liquor Control Act.
Dennis VanHorn, Administrative Assistant for Instruction at LPS described the Arts Program during a hearing before the Commission on March 3, 1999. The Arts Program involves a team of five teachers and eighty students. The Arts Program will be based out of space rented in the Haymarket. The Haymarket was selected because it is a cultural area which offers valuable educational resources to students in the Arts Program. Many people located in the Haymarket are partnering with the Arts Program. In addition, the Haymarket is near other cultural centers, such as the Lied Center, Sheldon Art Gallery, and the University of Nebraska, which will cut down on travel time. Students who enroll in the Arts Program remain students at their home high school and all grades are transcripted at their home high school. Finally, Mr. VanHorn stated that students will typically be participating in the Arts Program from 10:00 a.m. until 2:30 p.m. during the school day.
Also stated during the hearing before the Commission was that the Nebraska Department of Education ("NDE") and the Nebraska School Activities Association ("NSAA") have determined that the Arts Program does not meet the definition of a "school." If the Arts Program was defined as a school by NDE, it would have to meet the accreditation requirements of Rule 10 and offer such services as counselors and health care. Arts Program students are considered by NSAA as students of their home high school and as such participate in activities and athletics at their home high school. NSAA has indicated that it uses NDE's definition of "school."
 Statutes and Administrative Rules
Neb. Rev. Stat. § 53-177 (1998) states, in relevant part, that "[n]o license shall be issued for the sale at retail of anyalcoholic liquor within one hundred and fifty feet of any . . .school. . . ." This statutory language was originally enacted by Laws 1935, c. 116, § 35, p. 399. Subsequent amendments did not alter or change this portion of the statute. School" is not defined in the Nebraska Liquor Control Act (§§ 53-101 to53-1,121), but is defined in the rules and regulations of the Commission. Thus, for purposes of the question presented, the definition of "school" adopted in the Commission's regulations is controlling.
Commission rule 2-012.01 states:
 "School" shall mean a building which is used as a place for the instruction of pupils in elementary or high school grades, and which is owned, leased, or otherwise under the jurisdiction and control of a public school district or of the administration of a private, denominational, or parochial school accredited by the State Board of Education.
(Emphasis added).
 Analysis
No legislative history is available for the enactment of §53-177 in 1935. The primary objective of such laws is "to remove the atmosphere of an establishment where intoxicating liquors are sold a reasonable distance from institutions where the milieu of such places is considered inimical to the best interests and welfare of those attending or present at such institutions." 45 Am. Jur. 2d Intoxicating Liquors § 140 (1969).
The Commission's definition of "school" was adopted in 1994 and has remained unchanged. "Although construction of a statute by a department charged with enforcing it is not controlling, considerable weight will be given to such a construction, particularly when the Legislature has failed to take any action to change such an interpretation." McCaul v. American SavingsCo., 213 Neb. 841, 846, 331 N.W.2d 795, 798 (1983). "Generally, rules and regulations of an administrative agency governing proceedings before it, duly adopted and within the authority of the agency, are as binding as if they were statutes enacted by the Legislature." Douglas County Welfare Admin. v. Parks,204 Neb. 570, 572, 284 N.W.2d 10, 11 (1979). See also Nucor Steel v.Leuenberger, 233 Neb. 863, 448 N.W.2d 909 (1989).
Case law also indicates an agency's interpretation of its own rules and regulations will generally be considered controlling, so long as the interpretation is a reasonable reading of the regulation, and the agency is not acting arbitrarily, capriciously, or outside its statutorily created authority. The Nebraska Supreme Court has repeatedly held that "deference is accorded to an agency's interpretation of its own regulations unless plainly erroneous or inconsistent." In reApplication of Jantzen, 245 Neb. 81, 84, 511 N.W.2d 504, 509
(1994). See also Omaha Pub. Power Dist. v. Nebraska Dept. ofRevenue, 248 Neb. 518, 537 N.W.2d 312 (1995); Department ofBanking and Finance v. Wilken, 217 Neb. 796, 352 N.W.2d 145
(1984).
Based on the information you provided to us, the definition of "school" within the meaning of § 53-177 and Commission rule 237-LCC-012.01 was discussed at one prior Commission hearing. On January 24, 1997, Ginn Oil Company, dba Goodies, submitted an application to the Commission for a liquor license after it was denied a license by the city of Omaha based upon it being within 150 feet of a school and having an adverse impact on the neighborhood.
A hearing was held on March 14, 1997 before the Commission on the issue of the liquor license application filed by Goodies. One issue discussed at the hearing was whether the Child and Family Development Corporation fit within the Commission's definition of "school." The Child and Family Development Corporation ("Corporation") was a private, non-profit corporation which provided Head Start educational instruction for pre-elementary children, GED adult education services, and education classes for which students received high school credits. It contracted with Omaha Public Schools ("OPS") and other educational institutions to provide these services. It received local, state and federal funds for its operation. Some of its teachers were employed by OPS, and others were employed by the Corporation. It used the same early childhood curriculum as did OPS, and its staff jointly participated in curriculum training with OPS classroom staff. It was an approved contractor with the Nebraska Department of Education to provide services to children diagnosed with a disability. It provided free, hot meals to eligible children as defined by the Nebraska Department of Education and the U.S. Department of Agriculture, and provided transportation for a majority of those in attendance. The Corporation served 116 children at the location near Goodies.
The Commission voted to grant the liquor license to Goodies. On the issue of whether the Child and Family Development Corporation was a school, one Commissioner stated that it was a school because it received federal, state and local grants and along with receipt of the grant funds came requirements governing the operation of its educational programs. The other two Commissioners stated that the Corporation was not a school because it did not answer directly to the Omaha School Board. The written Order granting the license does not provide a finding on whether the Child and Family Development Corporation is a school within the Commission's definition, nor does it reference the controversy in any way. It merely states that the applicant can conform to the requirements of the Liquor Control Act and the rules of the Commission.
Based on the plain reading of the Commission's own definition, it is our opinion that LPS's Arts Program fits within the meaning of "school" as intended by Commission rule 237-LCC2-012.01. LPS has leased space in the Stacy Building to be used for the instruction of high school students enrolled in the Arts Program with the instruction occurring during normal school hours. The leased facility and the Arts Program come under the jurisdiction and control of the Lincoln Public School system and its Board of Education. This conclusion is consistent with the purpose of Neb. Rev. Stat. § 53-177. Liquor control laws are intended to remove establishments where intoxicating liquors are sold from places where the primary function is the education of school-age kids.
In conclusion, a finding by the Commission that the Arts Program is a school within the meaning of Commission rule 237-LLC2-012.01 would be a reasonable reading of the regulation and not erroneous or inconsistent. The Commission is, of course, free to amend the regulation so long as it is consistent with the language and intent of § 53-177.
Sincerely yours,
 DON STENBERG Attorney General
 Charlotte R. Koranda Assistant Attorney General
Approved by:
Don Stenberg 
Attorney General