issues of material fact remain. Having made this determination, we need not address the Association's remaining assignments of error.

## CONCLUSION

In conclusion, we find that the district court erred by granting the motion for summary judgment filed by Scott, as personal representative. Therefore, we reverse the district court's determination and remand the matter for further proceedings.

Reversed and remanded for
further proceedings.

———————————

Rodney D. Edwards, Sr., doing business as The
Home Improvement Store LLC, appellee,
v. Mount Moriah Missionary
Baptist Church, appellant.
___ N.W.2d ___

Filed April 8, 2014.    No. A-12-932.

1.  **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives the party the benefit of all reasonable inferences deducible from the evidence.
2.  **Summary Judgment.** Summary judgment is proper when the pleadings, depositions, and admissions on file, together with affidavits, show there exists no genuine issue either as to any material fact or as to the ultimate inferences to be drawn therefrom and show the moving party is entitled to judgment as a matter of law.
3.  **Contracts: Judgments: Appeal and Error.** The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.
4.  **Contracts: Pleadings.** To recover for breach of contract, a plaintiff must show proof of the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty.
5.  **Contracts.** A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.
6.  **Parol Evidence: Contracts.** The general rule is that unless a contract is ambiguous, parol evidence cannot be used to vary its terms.

7.  **Rules of the Supreme Court: Pleadings.** The key inquiry of the rule for express or implied consent to trial of an issue not presented by the pleadings is whether the parties recognized that an issue not presented by the pleadings entered the case at trial.

8.  **Courts: Pleadings: Pretrial Procedure.** In determining whether to allow amendment of pleadings to conform to the evidence, a court initially should consider whether the opposing party expressly or impliedly consented to the introduction of the evidence. Express consent may be found when a party has stipulated to an issue or the issue is set forth in a pretrial order.

9.  **Pleadings.** Implied consent to trial of an issue not presented by the pleadings may arise in two situations. First, the claim may be introduced outside of the complaint—in another pleading or document—and then treated by the opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue.

10.  **Pleadings: Proof.** Implied consent to trial of an issue not presented by the pleadings may not be found if the opposing party did not recognize that new matters were at issue during the trial. The pleader must demonstrate that the opposing party understood that the evidence in question was introduced to prove new issues.

11.  **Expert Witnesses.** An individual may qualify as an expert by reason of knowledge, skill, experience, training, or education.

12.  **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Douglas County: Leigh Ann Retelsdorf, Judge. Affirmed.

Michael B. Kratville for appellant.

Matthew P. Saathoff and Cathy R. Saathoff, of Saathoff Law Group, P.C., L.L.O., for appellee.

Irwin, Pirtle, and Bishop, Judges.

Pirtle, Judge.

## INTRODUCTION

Mount Moriah Missionary Baptist Church (Mount Moriah) appeals the rulings of the district court for Douglas County granting the motion for summary judgment of Rodney D. Edwards, Sr., doing business as The Home Improvement Store LLC, and overruling Mount Moriah's motion to alter or amend judgment. For the reasons that follow, we affirm.

BACKGROUND

Mount Moriah carries property insurance through Church Mutual Insurance Company (Church Mutual). Church Mutual hired Robert A. Olson to estimate the damage done to the church's roof by a windstorm on June 27, 2008. Olson is the owner of Accurate Insurance Adjusters, LLC, and has been an adjuster since 1986. Olson did the initial inspection of the church's roof in the summer and fall of 2010.

Olson prepared an initial estimated statement of loss based on a visual inspection of the damage to the building and roof. The statement estimated the cost of repair to be $29,922.45.

On or about October 28, 2010, Edwards, the sole owner of The Home Improvement Store, entered into a contract with Mount Moriah to replace the roof of the church. The contract stated:

> For the contract price(GRAND TOTAL) reflected in the Accurate Insurance Adjusters . . . final estimate,* [The Home Improvement Store] will furnish all labor and material according to the following specifications, thereinafter referred to as the work detail. Any additional unforeseen and /or omitted work needed in the completion, of this job will be documented, approved and invoiced to CHURCH MUTUAL . . . and subsequently remitted to [The Home Improvement Store] by [Mount Moriah].
>
> . . . .
> *FOR ROOF REPLACEMENT

The contract identified Mount Moriah as the purchaser and owner of the premises at issue in Omaha, Nebraska. Under the contract, the church was to have no out-of-pocket expenses and a $500 deductible was to be waived if the church displayed a yard-sign advertisement for The Home Improvement Store for 60 days.

The contract identified The Home Improvement Store as the contractor, and the contract required a downpayment equal to 50 percent of the grand total upon the start of work, with the remaining balance to be remitted by the church upon completion of the work. Edwards obtained the necessary permits on November 3, 2010, and began work.

Edwards issued a "Revised Invoice for Roof" indicating Church Mutual had paid a total of $15,776.04 for all items completed by The Home Improvement Store. This included receipt of the downpayment of $9,827.27 and an additional payment of $5,948.76. The invoice indicates, "The remaining balance is subject to final approval of [Accurate Insurance Adjusters] and Church Mutual."

During the course of the roof replacement, Edwards determined that additional work was needed beyond the amount estimated in the original statement of loss. His recommendation was reviewed by Olson. Olson stated that on or about November 5, 2010, Edwards informed him of additional square footage not accounted for in the estimate, additional layers of old shingles requiring removal, damage to underlying decking, and additional items that needed to be completed to repair the church's roof.

Olson's affidavit stated that it is common and customary that when repair work is started, additional work may be necessary to complete all of the required repairs for proper replacement and repair of a roof. Olson personally inspected the roof and found Edwards' recommendation to be accurate.

Olson prepared a second statement of loss on November 29, 2010, reflecting the additional repairs. The amended total cost of repair was $38,210.74. The second statement also reflects discounts for certain charges, because these services were included in the original statement. The second statement was provided to Church Mutual, and the cost was approved as charged. The second statement shows that Church Mutual initially paid Mount Moriah $18,970.05 and that the remaining amount to be paid to cover the repair contract was $17,328.69. On November 29, Olson requested that Church Mutual make a final payment in the amount of $17,328.69, payable to both Mount Moriah and Edwards.

Olson stated that the increase between the first statement of loss and the second statement of loss reflected necessary increases in square footage, linear footage, and additional work and that Edwards did not ask for Olson to "double bill" for any work completed. He stated that the charges were normal

and customary charges for the type of work completed and that they were fair and reasonable.

The work was completed on or about November 12, 2010. Edwards stated Mount Moriah informed him that the church did not want certain siding and trim or gutter work to be completed and that the church did not want certain awnings replaced; this work was not completed, and Edwards did not charge for these services. The value of this work, as set out in the second statement of loss, was subtracted from the total in Edwards' final invoice, sent December 16. The "grand total" reflected in the final invoice was $34,602.74. The final invoice acknowledged the previous payments by Mount Moriah of $9,827.27 and $5,948.76 and requested payment of the remaining amount due, $18,826.71.

After receipt of the final invoice, Mount Moriah submitted a partial payment of $9,425.86 to Edwards; however, the check was returned to Edwards by the church's bank because the account had insufficient funds on January 20, 2011. The bank sent Edwards a letter stating that Mount Moriah's account also had insufficient funds on December 28, 2010, the date the check was issued.

Edwards attempted to collect from the church the amount reflected in the final invoice, and he alleges he suffered a financial loss as a result of the church's nonpayment. Edwards sent an e-mail to the pastor at Mount Moriah, requesting payment of the church's remaining balance. The e-mail indicated Olson told Edwards that Mount Moriah had received the final check from Church Mutual, payable to the church and The Home Improvement Store. The pastor sent e-mails to Edwards indicating the church did not intend to pay the amount in the final invoice. He stated that the church "never agreed to turn over the complete settlement from [Church Mutual] to [The Home Improvement Store]" and that the church would not pay, just because the insurance company had paid, for work that was not done.

Edwards filed his complaint on January 3, 2011, alleging Mount Moriah refused to pay the outstanding balance of the contract for roof repairs. Though the final invoice total was $18,826.71, Edwards' complaint requested payment of

$18,226.71, subtracting $600 for air-conditioning repairs which Edwards determined were not necessary and therefore were not completed.

Mount Moriah's answer denied the amount owed to Edwards and alleged that Edwards "may be owed some amount but that the fair and reasonable value of said additional services is likely less than $1,000.00." Mount Moriah denied Edwards' allegation that the project was completed in a good and workmanlike manner. Mount Moriah stated the amount charged was not fair and reasonable. Mount Moriah did not file a counterclaim or plead any affirmative defenses.

Edwards filed a motion for summary judgment on February 21, 2012, and the matter came before the district court for Douglas County on May 14.

Mount Moriah's answers to interrogatories allege that there was no breach of contract, because Church Mutual paid for work which Edwards did not complete, and that the church paid Edwards for all work actually completed. The pastor's affidavit in opposition to the motion for summary judgment also alleged Mount Moriah was not given credit for work not completed by Edwards, including replacement of gutters and combing of air-conditioning units. The pastor's affidavit also alleged the church was entitled to a deductible of $500 provided in the contract.

Edwards' affidavit alleged his final invoice did not include the costs associated with the gutters because he was asked not to do this work by the church. Edwards' affidavit stated that he had planned to comb the air-conditioning units after that time, but that he subsequently opined the units had not suffered enough damage to require combing, and that as such, the units were not combed. Edwards stated that he informed an agent of the church that the final amount he requested was $600 less than the amount reflected in the final invoice, an amount attributable to the charged cost for combing the air-conditioning units.

Edwards also alleged he did not provide the $500 deductible because it was contingent on Mount Moriah's displaying a yard-sign advertisement for The Home Improvement Store for 60 days. Edwards alleged that he attempted to place a sign

in Mount Moriah's lawn on a number of occasions but that the church removed the sign every time.

At the hearing, Mount Moriah offered an affidavit of Addie Hardrick. Hardrick's affidavit alleged he looked at the roof of Mount Moriah in 2012 and found that certain of the repairs claimed to have been made by Edwards were not done, or were not done properly. Hardrick alleged that as a result of Edwards' work, Hardrick made additional repairs in the amount of $7,984 and Mount Moriah would be expected to make additional repairs for approximately $1,500.

Edwards objected on foundation, as Hardrick's affidavit did not correctly identify the address of Mount Moriah. Edwards also objected on competency, as Mount Moriah attempted to qualify Hardrick as an expert. The affidavit does not identify Hardrick's position, employer, or experience. The court considered the evidence and found Hardrick's affidavit was not relevant on the claims framed by the complaint and answer, because Mount Moriah did not "affirmatively allege accord and satisfaction, setoff, breach of contract or negligence" and did not raise these issues on counterclaim. The court found that affidavits of two Mount Moriah church volunteers were not relevant to the claims framed by the complaint and answer. The district court also found that Mount Moriah submitted no evidence on the fair and reasonable value of the services provided by Edwards to contradict the evidence supplied by Edwards and Olson. The district court granted summary judgment on July 10, 2012.

Mount Moriah filed a "Motion to Alter and/or Amend Judgment" on July 17, 2012. The matter came before the district court on September 7, and Mount Moriah's motion was denied. Mount Moriah timely appeals.

## ASSIGNMENTS OF ERROR

Mount Moriah asserts the trial court erred in granting Edwards' motion for summary judgment and in denying Mount Moriah's motion to alter or amend the judgment. The church also asserts the trial court erred in raising and sustaining sua sponte objections to the church's proffered expert testimony of Hardrick.

## STANDARD OF REVIEW

[1] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives the party the benefit of all reasonable inferences deducible from the evidence. *Green v. Box Butte General Hosp*., 284 Neb. 243, 818 N.W.2d 589 (2012).

[2] Summary judgment is proper when the pleadings, depositions, and admissions on file, together with affidavits, show there exists no genuine issue either as to any material fact or as to the ultimate inferences to be drawn therefrom and show the moving party is entitled to judgment as a matter of law. *Id*.

[3] The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below. *Bedore v. Ranch Oil Co*., 282 Neb. 553, 805 N.W.2d 68 (2011).

## ANALYSIS

[4] In order to recover for breach of contract, a plaintiff must show proof of the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty. See *Department of Banking, Receiver v. Wilken*, 217 Neb. 796, 352 N.W.2d 145 (1984).

[5] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms. *Davenport Ltd. Partnership v. 75th & Dodge I, L.P.*, 279 Neb. 615, 780 N.W.2d 416 (2010).

The district court found that the parties entered into a valid contract for roof replacement and that the contract was not ambiguous. The district court found the contract contained clear terms for determining the final contract price for the services and materials to be provided by Edwards. The court also found there was no evidence of the fair and reasonable value of the services to contradict the evidence supplied by Edwards and by Olson of Accurate Insurance Adjusters. The court found there were no material facts in dispute and granted summary judgment.

*Value of Contract.*

Mount Moriah asserts there is a genuine issue of material fact regarding whether Mount Moriah paid the contract in full. Mount Moriah asserts the parties agreed in the contract to a grand total of $19,654.54 and paid half of that amount as a downpayment. Mount Moriah asserts that the other half was "compromised by the parties downwards to $5948.76" and that the church paid that amount to Edwards. Brief for appellant at 1. The church's internal "accounts payable approval voucher" is marked "payment in full."

Our review of the evidence shows the contract states that the contract price shall be the final estimate of Accurate Insurance Adjusters. The initial statement of loss prepared by Olson of Accurate Insurance Adjusters and submitted to Church Mutual for approval was $29,922.45. The contract stated, "Any additional unforeseen and /or omitted work needed in the completion, of this job will be documented, approved and invoiced to CHURCH MUTUAL . . . and subsequently remitted to [The Home Improvement Store] by [Mount Moriah]."

When Edwards began work on the church, he discovered additional square footage not accounted for in the estimate, additional layers of old shingles requiring removal, damage to underlying decking, and additional items that needed to be completed to repair the church's roof. Olson inspected the roof; prepared a second, revised statement of loss to reflect the additional work, for a new total of $38,210.74; and submitted it to Church Mutual for approval. That amount was paid to Mount Moriah, according to Olson.

[6] The general rule is that unless a contract is ambiguous, parol evidence cannot be used to vary its terms. *Stackhouse v. Gaver*, 19 Neb. App. 117, 801 N.W.2d 260 (2011). Mount Moriah's assertion that the parties compromised downward is an attempt to introduce parol evidence, but the terms of the contract were clear and unambiguous.

Viewing the evidence in the light most favorable to Mount Moriah and giving it the benefit of all reasonable inferences deducible from the evidence, we find there was no material issue of fact in dispute with regard to the total value of the

agreed-upon contract. See *Green v. Box Butte General Hosp*., 284 Neb. 243, 818 N.W.2d 589 (2012).

Mount Moriah also asserts there is an issue of fact as to whether it should be billed for 67 square feet, as reflected in the second statement of loss, or whether the amount should be for 52⅓ square feet, as reflected in the first statement of loss.

As stated above, the parties provided for additional and unforeseen work in the terms of the contract. After Edwards discovered the difference in square footage, he submitted the change to Olson, who inspected the property to verify the accuracy of Edwards' claim. Olson's affidavit states that the change in square footage was necessary, that he was not asked to double bill for any work completed, and that the charges were customary, fair, and reasonable.

However, there is evidence that some of the work contemplated in the original contract was not completed, and the total contract price was to be adjusted downward to reflect such work.

*Work Not Completed*.

Mount Moriah asserts that there is an issue of fact as to whether Mount Moriah should get credit for work not completed by Edwards and whether it is entitled to the $500 deductible included in the contract.

There is no dispute that Edwards did not complete certain work on the gutters, siding, trim, and air-conditioning units. The evidence shows Edwards' invoice does not include a charge for gutters, siding, or trim. Though a $600 charge attributed to combing the air-conditioning units was included in the final invoice issued to Mount Moriah in December 2010, Edwards' affidavit states that he does not seek payment for that work because it was not performed. As a result, the amount requested in this case is equal to the amount requested in the final invoice, minus $600, or $18,226.71. All other work reflected in the final invoice, with the exception of the air-conditioning work, was work that was completed. The value of this work, as set out in the second statement

of loss, is equal to the amount requested by Edwards in this case.

There is no issue of fact as to whether Mount Moriah is entitled to a credit for work not performed, because Edwards did not request payment for the work not performed.

Mount Moriah also asserts that it is entitled to a $500 credit for the deductible. The contract states, "[T]he $500.00 deductible is waived for 60 day yard sign display." The only evidence in the record with regard to the placement of the yard sign is that Edwards' affidavit alleges, "[The Home Improvement Store] attempted to place a sign in [Mount Moriah's] yard on a number of different occasions, but [Mount Moriah] kept removing the said sign." Based upon the evidence, there is no issue of fact regarding whether Mount Moriah is entitled to the deductible; the yard sign was not displayed for 60 days, and therefore, Edwards was within his right to withhold the deduction for the yard-sign display.

*Affirmative Defenses Not
Raised in Pleadings.*

Mount Moriah also asserts that Edwards charged for certain work and that the church found upon later inspection that the work was allegedly not completed to a satisfactory standard, or was not completed at all. Mount Moriah alleges that this work caused damage to the church and that as a result, Mount Moriah incurred $7,984 to pay for repairs and expects to incur another $1,500 to remedy such defects. Mount Moriah submitted this evidence through the affidavit of Hardrick. At no time prior to the district court hearing was Hardrick, or any other proffered expert, disclosed by Mount Moriah during discovery.

The trial court excluded Mount Moriah's evidence about Edwards' alleged nonconforming work, because it was outside of the scope of the pleadings. The court found Mount Moriah did "not affirmatively allege accord and satisfaction, setoff, breach of contract or negligence. Neither were those theories raised in counterclaim." The trial court also found Edwards properly objected that the evidence was not sufficient to establish Hardrick's qualifications as an expert.

Neb. Ct. R. Pldg. § 6-1112(b) states, "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required," except for the enumerated defenses which may be made by motion. Mount Moriah's answer failed to allege any affirmative defenses, and Mount Moriah did not file a counterclaim.

The court does not consider evidence submitted by a party on issues and claims not set forth in the pleadings; therefore, we would not consider Hardrick's affidavit with regard to the damages allegedly sustained, unless another specific provision or exception applied.

Neb. Ct. R. Pldg. § 6-1115(b) allows amendment of the pleadings if certain conditions are met. The Nebraska Supreme Court has assumed, without deciding, that § 6-1115(b) can be properly applied to summary judgment. *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. 809, 708 N.W.2d 235 (2006). Accordingly, we apply § 6-1115(b) in the instant case. That subsection of the rule provides, in part, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Here, Mount Moriah asserts the issue of the alleged defective work was tried by implied consent.

[7-10] The Nebraska Supreme Court has stated that the key inquiry of the rule for "'express or implied consent'" is whether the parties recognized that an issue not presented by the pleadings entered the case at trial. *Blinn v. Beatrice Community Hosp. & Health Ctr.*, 270 Neb. at 817, 708 N.W.2d at 244.

> "In determining whether to allow amendments to con-form to the evidence, a court initially should consider whether the opposing party expressly or impliedly con-sented to the introduction of the evidence. Express con-sent may be found when a party has stipulated to an issue or the issue is set forth in a pretrial order.

> "Implied consent may arise in two situations. First, the claim may be introduced outside of the complaint — in another pleading or document — and then treated by the

opposing party as if pleaded. Second, consent may be implied if during the trial the party acquiesces or fails to object to the introduction of evidence that relates only to that issue.

"Implied consent may not be found if the opposing party did not recognize that new matters were at issue during the trial. The pleader must demonstrate that the opposing party understood that the evidence in question was introduced to prove new issues."

*Id.*, quoting 3 James Wm. Moore et al., Moore's Federal Practice § 15.18[1] (3d ed. 2005) (emphasis omitted).

It is clear that the parties did not expressly consent to the amendment of the pleadings to include defective work or other affirmative defenses.

The remaining question is whether the issues were raised by implied consent. The record shows Edwards objected on competency and foundation grounds to Mount Moriah's offering Hardrick's affidavit at the summary judgment hearing. Edwards also asked for rebuttal when Mount Moriah asserted that the trial court should take Hardrick's affidavit into account on the issue of defective work. Edwards' counsel asserted that defective work was not at issue and stated, "You have to raise it in an affirmative defense or file a counterclaim."

We find, upon our review of the evidence, that the pleadings were not amended under § 6-1115(b) here, because the issues of defective work or accord and satisfaction were not tried by express or implied consent.

Further, Hardrick's affidavit is not sufficient to meet the requirements to qualify an individual as an expert. Ordinarily, an expert's opinion is admissible under Neb. Rev. Stat. § 27-702 (Reissue 2008) if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to disclose the basis of that opinion on cross-examination. *Village of Hallam v. L.G. Barcus & Sons*, 281 Neb. 516, 798 N.W.2d 109 (2011). It is within the trial court's discretion to determine whether there is sufficient foundation for an expert witness to give his opinion about an issue in question. *Id.*

[11] Under § 27-702, a witness can testify concerning scientific, technical, or other specialized knowledge only if the witness qualifies as an expert. *Orchard Hill Neighborhood v. Orchard Hill Mercantile*, 274 Neb. 154, 738 N.W.2d 820 (2007). An individual may qualify as an expert by reason of knowledge, skill, experience, training, or education. See *Northern Nat. Gas Co. v. Beech Aircraft Corp.*, 202 Neb. 300, 275 N.W.2d 77 (1979).

Upon our review, Hardrick's affidavit fails to set forth sufficient foundation for his opinion, because he includes no references to his occupation, training, experience, qualifications, or education. He also fails to accurately describe the property he inspected and the methodology he employed during such inspection. He merely states that he was hired to "look at the structure" after a rainstorm and gave his opinion that the damage was attributable to Edwards' work. Therefore, Hardrick's affidavit does not support Mount Moriah's assertion that there are genuine issues as to any material fact.

### Failure to Object to Proffered Expert Testimony on Relevance.

Mount Moriah asserts that Edwards' failure to object that Hardrick's affidavit was not relevant waived the objection, and Mount Moriah asserts that it was outside of the province of the court to exclude the evidence on a sua sponte objection. Edwards did object to the affidavit on foundation and competency and asserted at the hearing that Mount Moriah must raise the right to setoff as an affirmative defense or file a counterclaim and that this was not done.

The trial court's order found the affidavit was excluded as evidence of issues not relevant to the claims framed by the complaint and answer. The trial court noted that Edwards objected to the evidence during the hearing, and it stated that it would not consider evidence submitted on issues and claims not set forth in the pleadings. Further, the trial court stated Mount Moriah could not interject new theories of recovery that would substantially change the nature of the case as well as reopen concluded discovery to first present the theories at a motion for summary judgment.

[12] As discussed above, Hardrick's affidavit was properly excluded from evidence because it lacked the foundation to qualify him as an expert and failed to demonstrate his competence, both objections raised by Edwards at the hearing. Having found that the affidavit was properly excluded, we decline to discuss whether the court made a sua sponte objection with regard to the affidavit's relevance. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Hill v. Hill*, 20 Neb. App. 528, 827 N.W.2d 304 (2013).

### CONCLUSION

Upon our review of the evidence, we find that there are no genuine issues of material fact and that Edwards was entitled to judgment as a matter of law.

AFFIRMED.

---

WILLIAM BURNETT, APPELLANT AND CROSS-APPELLEE,
v. TYSON FRESH MEATS, INC., APPELLEE
AND CROSS-APPELLANT.

___ N.W.2d ___

Filed April 8, 2014.     No. A-13-278.

1. **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or the award.

2. ____: ____. On appellate review of a workers' compensation award, the trial judge's factual findings have the effect of a jury verdict and will not be disturbed unless clearly wrong.

3. **Workers' Compensation.** The statutory scheme found in Neb. Rev. Stat. § 48-121 (Reissue 2010) compensates impairments of the body as a whole in terms of loss of earning power or capacity, but compensates impairments of scheduled members on the basis of loss of physical function.

4. ____. The test for determining whether a disability is to a scheduled member or to the body as a whole is the location of the residual impairment, not the situs of the injury.